**NORFOLK SOUTHERN RAILWAY CO. and Central of Georgia Railroad Co.**

v.

**CITY OF HAPEVILLE.**

**Civ. No. 1:91–cv–2819–ODE.**

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 4, 1991.

Burt DeRieux, Keith J. Reisman, Branch, Pike, Ganz & O'Gallaghan, Atlanta, Ga., for plaintiffs.

Frank E. Coggin, Office of Frank E. Coggin, College Park, Ga., for defendant.

**ORDER**

ORINDA D. EVANS, District Judge.

This action seeking declaratory and injunctive relief from a city ordinance is before the court on Plaintiffs' motion for a preliminary injunction.

Plaintiffs in this action are railroad companies which operate trains within the City of Hapeville. On February 7, 1989, Defendant City of Hapeville ("City") adopted an ordinance prohibiting the blowing of train whistles and horns within its corporate limits except in cases of emergency. Code of Ordinances of the City of Hapeville, Title XI, ch. 1, § 11–1–30 ("Ordinance" or "§ 11–1–30"). This ordinance was adopted because of what Defendant characterizes as excessive train noise (whistleblowing) in Hapeville. Prior to the adoption of the ordinance it was apparently the practice of Plaintiffs' engineers to blow a whistle as their trains approached railroad grade crossings. In the three years before the ordinance was enacted, eight accidents occurred at railroad grade crossings within Hapeville. In the two and three-quarters years since the adoption of the ordinance, fourteen such accidents have occurred (although rail traffic in Hapeville has de-

creased during this period).[1] The most recent accident occurred on October 29, 1991. Plaintiffs argue that the ordinance endangers public safety insofar as it restricts the ability of train operators to prevent emergencies from arising by blowing their whistles or horns. Plaintiffs further contend that the ordinance violates both the Constitution of the United States and the Constitution of the State of Georgia and seek a preliminary injunction barring the City from enforcing the ordinance.

The decision to grant or to deny a preliminary injunction is a matter committed to the discretion of the trial court. *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983). The trial court's discretion in making this determination, however, is guided by four factors. To obtain a preliminary injunction, Plaintiffs must establish:

> (1) a substantial likelihood that [they] will prevail on the merits, (2) a substantial threat that [they] will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to [P]laintiffs outweighs the threatened harm the injunction may do to [D]efendant, and (4) that granting the preliminary injunction will not disserve the public interest. (citations omitted).

*Johnson v. U.S. Dep't of Agriculture*, 734 F.2d 774, 781 (11th Cir.1984) (*quoting Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974)).

*Likelihood of Success on the Merits.* Plaintiffs contend that City of Hapeville Ordinance § 11–1–30 is preempted by the Federal Railroad Safety Act of 1970, 45 U.S.C. §§ 421–441 ("FRSA").[2] The stated goals of this Act include the promotion of safety in all aspects of railroad operations, the reduction of railroad related accidents, and the reduction of deaths, injuries, and property damage associated with such accidents. 45 U.S.C. § 421. The preemption provision of the Act states:

> The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A state may adopt or continue in force an additional or more stringent law, rule, regulation, order or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434. Courts have consistently interpreted this provision as manifesting "total preemptive intent" on the part of Congress. *Nat'l Ass'n of Regulatory Utility Comm'ners v. Coleman*, 542 F.2d 11, 13 (3d Cir.1976); *Consolidated Rail Corp. v. Smith*, 664 F.Supp. 1228, 1236 (N.D.Ind. 1987).

Plaintiffs argue that § 434 of the FRSA provides two grounds for preemption of Defendant's ordinance. First, Plaintiffs contend that under § 434 only *states*, not political subdivisions thereof, may regulate railroad safety in the absence of federal regulation or for the purpose of dealing with local hazards. Plaintiffs cite persuasive, binding authority in support of the proposition that municipalities may not adopt regulations relating to railroad safety in order to curb local hazards. *See Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1112 (5th Cir.1973), *cert.*

---

**1.** Plaintiffs claim that only seven accidents occurred prior to the adoption of the ordinance and that more than fifteen accidents have occurred since § 11–1–30 went into effect. For purposes of resolving this motion, the court will accept Defendant's statistics.

**2.** Plaintiffs also argue that the ordinance is preempted under Georgia law, that it violates

the Due Process Clauses of the Constitution of the United States and the Constitution of the State of Georgia, and that it violates the Commerce Clause of the Constitution of the United States. The court need not reach these arguments, however, as it finds Plaintiffs have demonstrated a substantial likelihood of success on their claim of federal preemption.

*denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (local hazard exception to preemption under § 434 requires "*State* action") (emphasis in original); *CSX Transportation, Inc. v. City of Tullahoma, Tennessee,* 705 F.Supp. 385, 387 (E.D.Tenn. 1988); *Consolidated Rail Corp. v. Smith,* 664 F.Supp. 1228, 1236 (N.D.Ind.1987). Second, Plaintiffs argue that regulations promulgated by the Federal Railroad Administration and the Environmental Protection Agency ("EPA") occupy the field of locomotive warning devices and railroad safety so as to preempt § 11–1–30. *See Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

Defendant's primary response to Plaintiffs' federal preemption arguments is that § 11–1–30 is not a railroad safety regulation. Defendant claims that the subject of the ordinance is simply "the unnecessary use of train whistles." Defendant's Brief in Response to Petitioners' Motion for Temporary Restraining Order, p. 3. Section 11–1–30 provides in relevant part:

Section 11–1–30 BLOWING OF TRAIN WHISTLES OR HORNS PROHIBITED. It shall be unlawful for any railroad company, engineer, fireman, or other person employed by any railroad company, to sound or blow the whistle or horn of the locomotive of any such railroad company at any time within the corporate limits of the City of Hapeville, except in an emergency where life or property is imperiled or when necessary for proper signals pursuant to the Official Code of Georgia Annotated or pursuant to any Federal Law.

\*   \*   \*   \*   \*   \*

The City of Hapeville shall cause to be posted for pedestrians and motor vehicles, on both sides of each railroad crossing within the City Limits of the City of Hapeville, a sign which shall read as follows: "CAUTION—TRAINS DO NOT SOUND WHISTLES OR HORNS," or other such similar wording.

Code of Ordinances of the City of Hapeville, Title XI, ch. 1, § 11–1–30.

The terms of the ordinance as well as its subject matter demonstrate clearly that § 11–1–30 "relat[es] to railroad safety" within the meaning of 45 U.S.C. § 434. Defendant's claim that the ordinance merely regulates the "unnecessary use of train whistles" is wholly unconvincing. First, the ordinance defines the "unnecessary" use of train whistles and horns as the use of such devices in non-emergency situations, *i.e.,* situations in which the safety of pedestrians and motorists is otherwise assured. Second, although the ordinance was passed for the purpose of reducing noise within the corporate limits of Hapeville, it achieves this goal by directly regulating the use of a safety device. The Secretary of Transportation, acting through the Federal Railroad Administration, has issued regulations requiring all lead locomotives to be equipped with an "audible warning device" and prescribing a minimum sound level for such devices. 49 C.F.R. § 229.-129. A major purpose of train whistles, as audible warning devices, is to ensure the safety of pedestrians and motorists by warning them of a train's approach. 45 Fed.Reg. 21,092, 21,107 (March 31, 1980). Finally, the last paragraph of § 11–1–30 demonstrates the interconnection between Defendant's prohibition on whistleblowing and railroad safety. The ordinance directs that signs be posted at railroad crossings cautioning pedestrians and motorists that trains will not warn of their approach by blowing whistles. These signs are clearly posted to advise pedestrians and motorists to take safety precautions.

■ As the court finds that § 11–1–30 relates to railroad safety and Defendant offers no specific response to Plaintiffs' claim that municipalities may not adopt regulations relating to railroad safety in order to curb local hazards, Plaintiffs have demonstrated a substantial likelihood of success on their first grounds for preemption.

With regard to Plaintiffs' second grounds for preemption (its claim that federal regulations occupy the field), Defendant argues that § 11–1–30 does not directly conflict with any federal regulation. In

addition to the audible warning device requirement noted above, the Administrator of the EPA has promulgated regulations under the Federal Noise Control Act, 42 U.S.C. §§ 4901–4918, which specify the permissible decibel levels for noise emissions from railroad equipment during various phases of operation. These regulations specifically exempt noise emissions from audible warning devices when such devices are operated for purposes of safety. 40 C.F.R. § 201.10. Defendant contends that § 11–1–30 governs only when train whistles and horns may be used, rather than how loud such devices may be, and therefore that the ordinance does not conflict with EPA regulations. Even if this claim were correct,[3] Defendant ignores the larger point. Federal agencies have issued regulations requiring lead locomotives to be equipped with audible warning devices, prescribing minimum sound levels for such devices, and exempting such devices from noise emission standards when they are used for safety purposes. In such circumstances, Plaintiffs may well be able to establish that the federal government has occupied the field of regulation of locomotive warning devices and railroad safety. Plaintiffs have thus demonstrated a substantial likelihood of success on both of its federal preemption arguments.

*Irreparable Injury.* Plaintiffs have made a showing of irreparable injury sufficient for a preliminary injunction to issue in this action. In the absence of injunctive relief, Plaintiffs will be forced to comply with § 11–1–30 and their engineers will only be permitted to blow train whistles in emergencies once life or property has become imperiled. Plaintiffs' engineers will not be able to blow their whistles as a means of preventing such emergencies

from arising. Compliance with § 11–1–30 thus eliminates an important method of avoiding accidents at railroad grade crossings. The statistics presented by the parties suggest that accidents are more likely if Plaintiffs comply with the ordinance.[4] Failure to enjoin the ordinance would thus produce a substantial threat of injury to pedestrians and motorists within the City of Hapeville and of damage to the property of Plaintiffs and others and would potentially expose Plaintiffs to civil liability for any accidents that occurred. Overall, the ordinance creates a substantial threat that Plaintiffs will be unable to operate their trains safely.

In addition, in the absence of a preliminary injunction, Plaintiffs are potentially subject to criminal penalties for violations of § 11–1–30. Although Defendant has not yet issued any citations under the ordinance, the City Manager of Hapeville recently informed Plaintiffs that they were not complying satisfactorily with § 11–1–30. Plaintiffs and their employees thus face an increased risk of criminal penalties as well as a heightened prospect of trains being stopped and freight transport service being interrupted.

*Balance of Hardships and Public Interest.* Defendant has made no showing that the increase in train noise that would occur upon the issuance of an injunction would be unduly burdensome. In the absence of an injunction, however, Plaintiffs face the prospect of endangering public safety, incurring criminal penalties, sustaining damage to its property, and exposing itself to civil suits. Although residents of Hapeville may be exposed to increased noise, the issuance of an injunction in this action will enhance public safety. The public interest

3. It is not at all clear that Defendant's ordinance does not conflict with EPA regulations. It is possible that § 11–1–30 could be construed as a (prohibited) non-identical standard applicable to noise emissions from equipment already regulated by federal standards. *See* 42 U.S.C. § 4916(c)(1).

4. In addition, Defendant has recently requested that Plaintiffs remove "blow posts" erected in Hapeville. "Blow posts" are markings which identify the point at which an engineer should begin sounding a train's whistle upon approaching a railroad grade crossing.

will thus not be disserved by a grant of injunctive relief to Plaintiffs.

 Accordingly, Plaintiffs' motion for a preliminary injunction is GRANTED. Defendant is hereby ENJOINED from enforcing § 11–1–30 of the Code of Ordinances of the City of Hapeville.

SO ORDERED.