**CIVIL CITY OF SOUTH BEND, INDIANA and Civil City of Mishawaka, Indiana, Plaintiffs,**

v.

**CONSOLIDATED RAIL CORP., Grand Trunk Western Railroad Corp., and National Railroad Passenger Corp. a/k/a Amtrak, Defendants.**

No. 3:95–CV–29RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 14, 1995.

599

Jeffrey M. Jankowski, South Bend, IN, for City of South Bend.

John P. Gourley, Mishawaka City Atty., Mishawaka, IN, for City of Mishawaka.

Harold Abrahamson, Michael C. Adley, Abrahamson Reed and Adley, Hammond, IN, for Consolidated Rail Corp.

Robert J. Konopa, Ann–Carol Simons, Konopa and Murphy P.C., South Bend, IN, for Grand Trunk Western R.R. Corp.

Harold Abrahamson, Michael C. Adley, Abrahamson Reed and Adley, Hammond, IN, Jeffrey Moon, Nat. R.R. Passenger Corp., Washington, DC, for National R.R. Passenger Corp. (Amtrak).

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause came before the court on February 10 for final hearing pursuant to Fed. R.Civ.P. 65(b) on the motions for preliminary injunction filed by the plaintiff cities and one of the defendant railroads, and on the cities' amended complaint for declaratory judgment. At issue are ordinances passed by the two cities prohibiting the sounding of train whistles or horns at specified railroad grade crossings; the railroads contend that the ordinances are preempted by federal law.

For the reasons that follow, the court denies both requests for injunctive relief, and grants the cities' request for declaratory judgment. The court denies the railroad's motion and grants declaratory relief to the cities because the law does not support the railroad's contention: federal law does not preempt the ordinances. The court denies the cities' motions because the remaining requirements for an injunction are not satisfied. A court can issue an injunction only if the party seeking the injunction has no adequate remedy in a suit for damages; the cities' ability to fine the railroads for sounding audible warnings provides an adequate legal remedy. Further, a court can issue a injunction only if the injunction would not injure the public interest. These ordinances contain no provision allowing the sounding of whistles or horns in life-threatening circumstances. The court cannot conclude that an injunction prohibiting railroad employees from using audible signals under any circumstances, even when a whistle might save a life, is in the public interest.

### I.

The facts giving rise to this case are essentially undisputed, although the parties may disagree as to the strength of inferences drawn from the undisputed facts. The cities of South Bend and Mishawaka, Indiana have adopted ordinances that prohibit railroads from sounding audible warnings—whistles or horns—at twelve railroad grade crossings in South Bend[1] and twenty-six crossings in Mishawaka.[2] The sounding of audible train warnings disturbs city residents living and working near those crossings, interrupting sleep, conversation, school and church. Ordinance violations are punishable by fines of up to $2,500.

The defendants are railroads: Consolidated Rail Corporation ("ConRail"), Grand Trunk Western Railroad Corporation, and National Railroad Passenger Corporation ("Amtrak"). These railroads send more than eighty trains through the affected crossings on a daily basis. The railroads wish to sound

1. Sections 15–3 and 15–3.1 of the South Bend Municipal Code.

2. Mishawaka ordinance no. 74–82.

whistles and/or horns as they near the specified crossings. Studies have shown that the use of audible warnings reduces the likelihood of collisions between motorists and trains at grade crossings, and the railroads' internal rules require the sounding of audible warnings.

These parties have been to court on this issue before. In 1991, this court declined the cities' request for an injunction enforcing the ordinances, rejecting the railroads' arguments that federal law preempted the ordinances, but finding that the public interest in railroad safety precluded injunctive relief. During the pendency of the cities' appeal, the Indiana legislature repealed the cities' statutory authority to restrict audible train warnings; accordingly, the court of appeals vacated this court's judgment and dismissed the case as moot.

The parties return to court in the wake of legislative developments at the state and federal level since that ruling. The Indiana statute was amended in 1993 to resurrect whistle-regulating ordinances, such as those at issue here, that existed on January 1, 1991. In 1994, Congress enacted and amended the High–Speed Rail Development Act, 49 U.S.C. § 20101 *et seq.* The cities again claim the authority to regulate train whistles pursuant to the amended Indiana statute; the railroads contend the 1994 federal legislation, among other provisions of federal law, preempts state and local laws regulating audible warnings.

### II.

In response to the court's request for argument concerning the existence of subject-matter jurisdiction, the cities filed an amended complaint. "Subject matter jurisdiction" is the power to hear a case. Federal courts, like small claims courts, are courts of limited subject matter jurisdiction; Congress has granted federal courts the power to hear only certain types of cases. *Kokkonen v. Guardian Life Ins. Co. of America*, — U.S. —, —, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). If this case is not among those types of cases, the court has

no power to decide the case. The court is satisfied that it has jurisdiction over this case, although that jurisdiction rests on fewer grounds than the cities assert.

■ The cities assert jurisdiction under the Declaratory Judgments Act, 28 U.S.C. § 2201, but that statute does not independently confer jurisdiction upon a federal court; a declaratory judgment plaintiff must establish that the court otherwise has jurisdiction over the cause of action. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 253–54 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); 10A Charles A. Wright, Arthur A. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2767 (2d ed. 1983).

■ The cities assert jurisdiction under 28 U.S.C. § 1331, which provides federal courts with jurisdiction over cases arising under the laws of the United States. The cities' claim for relief, however, does not "arise under" federal law; the cities' authority to regulate train whistles arises under an Indiana statute, IND.CODE 8–6–4–1. That the defendant railroads rely on federal law as a basis for disregarding the ordinances does not make the cities' claim arise under federal law. The federal claim must appear on the face of the complaint, and the availability of a federal defense to a state law claim does not provide a federal court with subject matter jurisdiction under 28 U.S.C. § 1331. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 15–17, 21, 103 S.Ct. 2841, 2849–50, 2852, 77 L.Ed.2d 420 (1983); *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–128, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974); *Hudson Ins. Co. v. American Elec. Corp.*, 957 F.2d 826, 828 (11th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 411, 121 L.Ed.2d 336 (1992).

ConRail's counterclaim, which seeks an injunction against the ordinances' enforcement based on federal preemption, would not breathe federal subject matter jurisdiction into the case if jurisdiction were otherwise lacking, regardless of whether the counter-

claim was filed in federal court or in state court before removal to federal court. *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1273 (4th Cir.1985).

Accordingly, the court has no jurisdiction over this case under 28 U.S.C. § 1331.

 The court does, however, have subject matter jurisdiction pursuant to 28 U.S.C. § 1332, which provides federal courts with the power to decide cases between citizens of different states when the amount in controversy exceeds $50,000.00. South Bend and Mishawaka are Indiana citizens, and the railroads are citizens of Pennsylvania, Michigan and the District of Columbia.

The court does not believe that more than $50,000 is in controversy from the cities' perspective. The amount in controversy in a declaratory judgment action "is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977); *see also American Family Mut. Ins. Co. v. Lane*, 782 F.Supp. 415, 418 (S.D.Ind.1991). The cities' brief appears to concede that the difficulties of quantifying the value of the intrinsic right to enforce ordinances or the reduced value of real property due to noise is too great to suffice for these purposes. The cities note that full enforcement of the ordinances, coupled with full whistle sounding by the railroads, could produce fines in excess of $7 million a day, but the injunction sought by the cities, if issued and if successful, would eliminate those revenues to the cities.

Nonetheless, under the test employed in this circuit (although not in all circuits), the court also must look to the amount in controversy from the defendants' perspective. *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 391–95 (7th Cir.1979); *see also Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 329–30 (7th Cir.1993) (dicta recognizing that the Seventh Circuit has adopted the "either viewpoint" rule in injunctive or declaratory judgment actions). The potential fines to be imposed for sounding audible warnings easily exceed $50,000.

The court has the power to decide this case, and so turns to the merits of the case.

### III.

The cities seek a declaratory judgment that federal law does not preempt their ordinances; ConRail seeks a declaratory judgment that the ordinances are preempted. The cities seek a permanent injunction prohibiting the railroads from violating their ordinances; ConRail seeks a permanent injunction prohibiting the cities from enforcing the ordinances.

 A party seeking a permanent injunction must establish that (1) the applicable substantive law supports the party seeking the injunction, (2) the party seeking the injunction has no adequate remedy at law, and (3) the public interest would not be harmed by the requested injunction. Only the first of these issues need be resolved to decide the declaratory judgment requests. *See Dickinson v. Indiana State Election Bd.*, 933 F.2d 497, 503 (7th Cir.1991).

### A. Applicable Substantive Law: Preemption

 State or local law is preempted pursuant to the Supremacy Clause of the United States Constitution if (1) Congress expressly defines the extent to which federal law preempts state law, or (2) state law regulates conduct in a field that Congress intended the federal government to occupy exclusively, or (3) it is impossible to comply with both state and federal requirements or (4) the state law poses an obstacle to the accomplishment and execution of congressional purposes. *Cipollone v. Liggett Group, Inc.*, 505 U.S. ——, ——, 112 S.Ct. 2608, 2617–2618, 120 L.Ed.2d 407 (1992); *English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2274–75, 110 L.Ed.2d 65 (1990); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Maryland v. Louisiana*, 451 U.S. 725, 746–747, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981).

Indiana law authorizes cities to regulate audible train warnings under certain circumstances, IND.CODE 8–6–4–1, and in South Bend ordinance nos. 5457–72 and 6545–79 and Mishawaka ordinance no. 74–82, the cities have exercised that statutory authority

with respect to certain railroad crossings. The railroads do not challenge the validity of those ordinances under state law, but rather claim that the ordinances are preempted by various federal laws and/or are invalid under the Commerce Clause. None of the railroads's arguments are persuasive. The court agrees with the cities that no federal law presently preempts state and local laws regulating audible warnings by trains.

### 1. High–Speed Rail Development Act of 1994

■ The High–Speed Rail Development Act, as amended, directs the Secretary of Transportation to promulgate regulations requiring the sounding of a locomotive horn at every crossing:

> The Secretary of Transportation shall prescribe regulations requiring that a locomotive horn shall be sounded while each train is approaching and entering upon each public highway-rail grade crossing.

Pub.L. No. 103–440, § 302, 108 Stat. 4615, 4626 (1994) (to be codified at 49 U.S.C. § 20153(b)). The High–Speed Rail Development Act contains provisions for exceptions to the requirement for audible warnings as well as for waivers and exemptions. Pub.L. No. 103–440, § 302, 108 Stat. 4615, 4626 (1994) (to be codified at 49 U.S.C. § 20153(c) and (d)).

The Secretary has not, however, promulgated such regulations. Perhaps Congress can preempt a field simply by invalidating all state and local laws without replacing them with federal laws, but the High–Speed Rail Development Act discloses no such intent. Directing the Secretary of Transportation to preempt a field is not the same as preempting the field; here, Congress has done only the former. The second sentence of 49 U.S.C. § 20106, which was part of the High–Speed Rail Development Act, could present no plainer statement of the intent of future, but not present, preemption:

A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.

The railroads argue that, for two reasons, § 20106 provides no refuge for the cities' ordinances. First, they note that § 20153(b) (the directive to the Secretary to regulate audible warnings) is specific and was adopted in November, later than the more general § 20106 adopted in July, and hence controls. Such a construction is necessary only if the two provisions are inconsistent, however, and these provisions are perfectly consistent in directing the Secretary to act in the future while preserving existing law for the present. Second, the railroads contend that the directive in § 20153(b) so limits the Secretary's discretion as to foreclose any possibility that the cities' ordinances will survive, and so demonstrates an intention to invalidate ordinances such as these. The railroads may well be correct with respect to the inevitability of future preemption, but no analysis of preemption involves predicting the future.

The High–Speed Rail Development Act does not preempt the ordinances. Regulations yet to be promulgated under that Act may do so, but that Act does not.

### 2. The Federal Railroad Safety Act

The High–Speed Rail Development Act of 1994 appears to have been the catalyst for the railroads' decision to resume sounding audible warnings despite the ordinances, but the defendants do not base their arguments solely on that Act.

#### a. 45 U.S.C. § 434

ConRail and Amtrak argue that the Federal Railroad Safety Act of 1970 preempts the ordinances. The railroads' argument turns on 45 U.S.C. § 434,[3] but the High–Speed Rail Development Act repealed § 434 and replaced it with § 20106. Accordingly, the ar-

---

**3.** The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order,

or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. 45 U.S.C. § 434.

gument that §§ 434 and § 20153(b) combine to preempt the ordinances fails for the reasons discussed in the preceding section.

#### b. 49 C.F.R. §§ 217.7 and 217.11

■ Conrail and Amtrak next contend that the ordinances are preempted because the Secretary has promulgated other regulations concerning the sounding of locomotive horns at grade crossings. Conrail and Amtrak point to 49 C.F.R. § 217.7, which requires each railroad to keep their operating rules on file with the Federal Railroad Administration ("FRA") and upon 49 C.F.R. § 217.11 in which the Secretary requires each railroad to periodically instruct its employees on the meaning and application of the railroad's operation rules. The court disagrees. Requiring a railroad to submit its operating rules and to instruct its employees about the operating rules does not elevate the operating rules to the status of federal law capable of preempting a state's right to regulate otherwise unregulated railroad safety issues.

The railroads rely on *Burlington N.R. Co. v. City of Connell,* 811 F.Supp. 1459, 1464 (E.D.Wash.1993) (stating, without citation to authority, that the railroad's operating rules "have (arguably) acquired the force of a federal regulation"), but it does not appear that *Connell* is good law even in the Eastern District of Washington in light of *Southern Pac. Transp. Co. v. Pub. Util. Comm'n of Or.,* 9 F.3d 807 (9th Cir.1993), decided ten months after *Connell.* In *Southern Pacific,* the Ninth Circuit rejected the railroads' argument, in concluding that operating rules do not have the force of law and cannot preempt state law because the FRA neither approves of nor adopts the railroad's operating rules.

9 F.3d at 812 n. 5. The court finds the Ninth Circuit's reasoning persuasive.

#### c. 49 C.F.R. § 229.129

Conrail next contends, relying on *Norfolk S. Ry. Co. v. City of Hapeville,* 779 F.Supp. 601 (N.D.Ga.1991), that 49 C.F.R. § 229.129 preempts the cities' ordinances since the ordinances and the regulation are not compatible. The *Hapeville* court did not hold that 49 C.F.R. § 229.129 preempts local laws on audible warnings. The *Hapeville* court addressed a motion for a preliminary injunction and merely held that the movant might be able to show preemption. Given the limited nature of the *Hapeville* court's holding, the court finds *Hapeville* to be no precedential value in deciding the ultimate issue of whether the regulation preempts local law.

■ 49 C.F.R. § 229.129 requires that lead locomotives have an audible warning device of specified capabilities, but does not address the use of those devices.[4] There is no inconsistency with respect to the conduct required by this regulation and the ordinances at issue; one can possess an audible warning device without sounding it.

That the FRA was concerned with railroad safety when promulgating this regulation[5] does not contribute to the preemption analysis; the question for preemption is what the federal government has done with respect to the use of audible warnings by trains, not why it may have done other things.

#### d. Locomotive Boiler Inspection Act

ConRail and Amtrak next argue that the Locomotive Boiler Inspection Act, 45 U.S.C. § 23 ("LBIA") preempts the ordinances. The court disagrees. First, the High–Speed Rail Development Act repealed the LBIA

---

**4.** After August 31, 1980, each lead locomotive shall be provided with an audible warning device that produces a minimum sound level of 96 db(A) at 100 feet forward of the locomotive in its direction of travel. The device shall be arranged so that it can be conveniently operated from the engineer's normal position in the cab.
49 C.F.R. § 229.129.

**5.** In promulgating this regulation, the FRA expressed concern with the use of locomotive whis-

tles to prevent railroad grade crossing accidents. 44 Fed.Reg. 29,618; 45 Fed.Reg. 21,092, 21,107 (March 31, 1980) ("there are circumstances where the use of audible warning devices plays an integral role in minimizing hazards due to approaching trains"....). The FRA also acknowledged that "research focusing on audible warning devices indicate[s] that primary reliance on these devices to warn motorists is not justified...." 45 Fed.Reg. at 21,107.

and adopted similar, but not identical, provisions. *See* 49 U.S.C. 20102, 20701–20703, 21302. ConRail and Amtrak offered no argument based on those provisions.

▆ If it were assumed that the LBIA lives on through the High–Speed Rail Development Act, the court would find no preemption. ConRail and Amtrak cite cases addressing state efforts to regulate locomotive safety equipment,[6] a topic that was covered by the LBIA. South Bend and Mishawaka make no pretense of requiring or forbidding equipment on trains; the ordinances do not require the railroads to disconnect and remove the audible warning devices with which they are equipped. A more persuasive and apposite decision is *Southern Pac. Transp. Co. v. Pub. Util. Comm'n of Oregon,* 9 F.3d 807, which addressed an Oregon law that banned the sounding of locomotive whistles under certain conditions: "Because the Oregon law neither limits nor expands the type of equipment with which locomotives are required to be equipped, it neither interferes with the goals of the LBIA nor substantially interferes with its implementation." 9 F.3d at 811. This court agrees.

Regulating the use of equipment is distinct from regulating the equipment. The LBIA did not preempt these ordinances.

### e. Federal Noise Control Act

▆ ConRail and Amtrak next argue that the ordinances are preempted by Federal Noise Control Act, 42 U.S.C. § 4901–18, which required the Administrator of the United States Environment Protection Agency to publish noise emission regulations applicable to railroads. 42 U.S.C. § 4916(b). This argument assumes that the federal government preempts state law by adopting expressly inapplicable regulations; the EPA's regulations do not apply when a train whistle is sounded for safety purposes. 42 U.S.C. § 4916(c); *see* 49 C.F.R. § 210.3(b)(3) (1993);

40 C.F.R. § 201.10 (1994). The court cannot agree.

Again, the Ninth Circuit stated the answer succinctly in *Southern Pacific:*

> there is no preemption because, in implementing § 4916, the EPA has not enacted any regulation covering locomotive whistles. Indeed, the EPA expressly has *exempted* locomotive whistle standards from its regulatory scheme, and expressly has invited such regulation by the individual states. We therefore hold that the NCA does not preempt Oregon's law and regulations regarding train whistle sounding.

9 F.3d at 811–812 (emphasis in original) (citation and footnote omitted).

Neither the Federal Noise Control Act nor the regulations promulgated under that Act preempt these ordinances.

### 3. Commerce Clause

All three railroads contend that the ordinances are invalid because they excessively burden interstate commerce, art I, sec. 8, cl. 3. Conrail and Amtrak argue that future plaintiffs may allege the failure to sound audible warning devices as the causation of future train accidents, though they do not argue that any past or present plaintiffs have so alleged. The railroads also argue that the stopping of trains after accidents causes a "ripple effect" delaying trains throughout the entire Conrail operating corridor and disrupting the crew schedule on the entire Conrail system. Grand Trunk also notes the heightened risk of collisions imperils railroad employees, but does not explain why this implicates the Commerce Clause.

▆ States and municipalities may regulate matters affecting commerce for purposes of safety and public welfare if the regulation is evenhanded, effectuates a legitimate public interest, and affects interstate

---

**6.** *Napier v. Atlantic Coast Line Ry.,* 272 U.S. 605, 611–12, 47 S.Ct. 207, 209–10, 71 L.Ed. 432 (1926) (holding that state regulations regarding the use of cab curtains and fire-box doors were preempted by (LBIA)); *Missouri Pacific R.R. v. Railroad Com'n of Texas,* 850 F.2d 264, 269 (5th Cir.1988) (state regulation requiring train cabooses), *cert. denied,* 488 U.S. 1009, 109 S.Ct.

794, 102 L.Ed.2d 785 (1989); *Marshall v. Burlington N., Inc.,* 720 F.2d 1149 (9th Cir.1983); *Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n.,* 536 F.Supp. 653, 655–57 (E.D.Pa. 1982), *aff'd,* 696 F.2d 981 (3d Cir.1982), *aff'd,* 461 U.S. 912, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983).

commerce only incidentally. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). The cities' ordinances satisfy this test. First, the cities' ordinances are even-handed; they favor neither state nor local interests.

Second, the ordinances effectuate a legitimate public interest. South Bend ordinance 5457–72, South Bend Municipal Code § 15–3, states that "the Common Council ... finds that it would be in the best interest of the citizens ... if the City regulated the sounding of whistles or horns [at certain grade crossings]." The Common Council also found that the certain grade crossings were adequately guarded to provide safety to motorists and pedestrians and that the prohibition of whistle soundings would not create an undue risk of harm. South Bend Ordinance No. 6545–79, South Bend Municipal Code § 15–3.1, provides in its statements of purpose and intent that "the sounding of train whistles, horns, or bells at certain crossings within the City limits creates an unreasonable disturbance to the peace and repose of citizens residing in proximity to these crossings." The Mishawaka ordinance contains a finding that the regulation of train whistles would not create an undue risk of harm. The peace and repose of citizens is a legitimate local public interest, as determined by the passage of the ordinances.

Third, the actual effect on interstate commerce is quite minimal. The court can find no undue burden that these ordinances place on interstate commerce. The railroads are not forbidden to travel through the cities, or required to pay any tariff for doing so, or required to pass through at a greater or lesser speed. They are simply forbidden from taking certain action—the sounding of audible warnings—at certain places. States routinely regulate the conduct of interstate railroads without unduly burdening interstate commerce. *See, e.g., CSX Transp., Inc. v. Easterwood,* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (states can regulate conduct of railroads by making civil remedies available in negligence actions to the extent federal law had not preempted the subject matter of the alleged negligence).

The potential liability for a collision with a motorist at a crossing that is covered by these ordinances is not an undue burden on interstate commerce. Indiana law does not render a tortfeasor liable for another's fault. IND.CODE 34–4–33. The argument that interstate commerce is unduly burdened by the need to stop to allow a ticket to be written after a whistle has been sounded is particularly unpersuasive. The ordinances do not require an engineer to blow the train's whistle, then await a ticket; the ordinances forbid the use of the whistle or horn.

The ordinances are not invalid under the Commerce Clause.

### 4. Conclusion

Although regulations ultimately promulgated under the High–Speed Rail Development Act eventually may preempt the cities' ordinances, nothing in present federal law preempts the ordinances. The cities are entitled to a declaratory judgment to that effect. Further, because ConRail has not succeeded on the merits of its claims, its counterclaim for a permanent injunction must be denied. The court turns to the remaining issues with respect to the cities' request for a permanent injunction.

### B. Inadequate Remedy at Law

A party seeking injunctive relief bears the burden of demonstrating that the party has no adequate remedy through an award of damages. *Daniels v. Southfort,* 6 F.3d 482, 486 (7th Cir.1993); *Walgreen Co. v. Sara Creek Property Co., B.V.,* 966 F.2d 273 (7th Cir.1992). The cities have not met this burden. Unlike most parties seeking injunctive relief, these cities are lawmakers. They enact ordinances defining the legality of the railroads' conduct, cite the railroads for violating those ordinances, prosecute the railroads in state court for violations and collect fines, all independent of any federal injunction. The cities' amended complaint demonstrates that if the railroads were to flaunt the ordinances completely, the railroads could be fined more than $50 million weekly. It is difficult to find such a remedy inadequate.

The cities argue that history demonstrates the inadequacy of the remedy because the

trains continued to whistle last time around despite the ordinances, citations and fines. At the final hearing, the cities' counsel essentially contended that the railroads have demonstrated that they will ignore local ordinances, but will pay heed to orders from federal courts. As part of today's order, however, the cities obtain a declaratory judgment that federal law does not preempt their ordinances. The court has been presented with no argument or evidence to support a finding that, now that the court has ruled that the ordinances were not preempted, the cities' self-bestowed legal remedies will be inadequate to enforce the ordinances.

Compared to remedies available to most pursuers of injunctions, the cities' legal remedies are extraordinary. A federal injunction would provide little incremental benefit to the cities' arsenal.

### C. Public Interest

If the cities had demonstrated the absence of an adequate remedy at law, they further would have to show that the issuance of an injunction would harm the public interest, taking into account the effect the granting or denial of the injunction will have on nonparties. *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis,* 35 F.3d 1134, 1137 (7th Cir.1994). The people of South Bend and Mishawaka have elected their city councils to weigh issues such as this, and this court owes deference to their legislative decisions. On the other hand, under the law, the judicial function and responsibility of weighing the public interest when deciding whether to issue an injunction cannot be delegated to the legislative branch of any government. *Cf. Davenport v. DeRobertis,* 844 F.2d 1310, 1313–1314 (7th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). The court's balancing of the public interest leads to the conclusion that the requested injunction would not be in the public interest.

"Every order granting an injunction ... shall be specific in terms; shall describe in reasonable detail ... the act or acts sought to be restrained...." Fed.R.Civ.P. 65(d). The purpose of the rule's requirements of specificity and reasonable detail is to ensure that reasonable persons could understand what conduct was being enjoined. "The specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1973). Rule 65(d) requires that the terms of the injunction be "as specific as possible under the totality of the circumstances." *Medtronic, Inc. v. Benda,* 689 F.2d 645, 649 (7th Cir.1982), *cert. denied,* 459 U.S. 1106, 103 S.Ct. 731, 74 L.Ed.2d 955 (1983), *and cert. denied sub nom. Cain v. Medtronic, Inc.,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983); *see also Matter of Energy Co-op. Inc.,* 886 F.2d 921, 929 (7th Cir.1989). The principal purpose behind the specificity requirements is clear: "[s]ince an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt,* 414 U.S. at 476, 94 S.Ct. at 715.

An injunction simply requiring compliance with the ordinances would prohibit the use of audible warnings under any circumstances, because the ordinances have no exceptions for emergencies. An injunction allowing an "emergency" exception to the cities' ban on audible warnings necessarily would leave room for a reasonable person's uncertainty as to whether a given situation constitutes an "emergency"; that uncertainty is particularly unacceptable when the decision must be made in a span of a second or two by a railroad engineer whose own life may be in jeopardy.

The cities respond to this concern by noting that in the past, the cities' attorneys have investigated the circumstances of ordinance violations to ensure that fines are not sought for warnings sounded in emergencies. Such prosecutorial discretion does not, however, ease the requirement of Rule 65(d) that an injunction be specific in its terms and describe the affected conduct in reasonable detail. Only an injunction banning audible warnings at the specified grade crossings would comply with Rule 65(d). The court

must determine whether such an absolute ban would be in the public interest.

This decision may affect many members of the public. People who live, work, study, or worship within earshot of the affected railroad crossings find their peace disturbed by the drone of an audible train warning.

Motorists also will be affected. The Office of Safety's report on the Florida Whistle Ban experiment strongly suggests that railroad grade crossings are safer with train whistles than without. The cities counter that residents of the cities are accustomed to the absence of audible warnings, and generally respond well to the modified operation of the gates guarding the crossings. Grand Trunk's brief indirectly corroborates this argument by contending that if ConRail trains were to whistle at intersections while Grand Trunk observed the ordinances, city residents would come to rely on the whistles rather than the gates, increasing the risk of collision with silent Grand Trunk trains. South Bend and Mishawaka residents are not the only motorists, bicyclists and pedestrians that use these grade crossings, however. The crossings cannot be viewed in isolation; they may be used by those unfamiliar with the customs that guide resident-motorists.

Collisions at railroad grade crossings have effects on the public beyond the interests represented in this case. Medical costs, losses in productivity, and human losses from such collisions reach well beyond the boundaries of South Bend and Mishawaka. Those losses may extend, not just to city residents, but to railroad employees, nonresident motorists, and the families and dependents of persons involved in such collisions.

The court need not find that railroad crossings are unsafe without warning whistles to conclude that crossings are safer with warning whistles. An injunction that reduces the safety of a crossing by forbidding audible warnings even in emergency situations, and so increases the likelihood of a collision, is not consistent with the public interest.

### D. Conclusion

Because the cities have an adequate legal remedy under the ordinances, and because

injunctive relief is inconsistent with the public interest, the cities are not entitled to a permanent injunction.

### IV.

For the foregoing reasons, the court now:

A. GRANTS the plaintiff cities' request for declaratory judgment and ADJUDGES that federal law does not presently preempt South Bend ordinance nos. 5457–72 and 6545–79 or Mishawaka ordinance no. 74–82.

B. DENIES the plaintiff cities' request for a permanent injunction; and

C. DENIES defendant ConRail's counterclaim for declaratory judgment and a permanent injunction.

The clerk shall enter judgment accordingly. Costs shall be assessed against the defendants.

SO ORDERED.