Anthony A. SMITH et al., Appellants,

v.

Walter E. WASHINGTON et al.

No. 76–1370.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 18, 1977.

Decided Aug. 23, 1978.

Robert S. Catz, Washington, D. C., with whom Richard S. McMillin, Washington, D. C., Ann F. Cohen * and Robert Hays * were on brief, for appellants.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., for the District of Co-lumbia, with whom John R. Risher, Jr., Corporation Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, John M. Clifford and Leo N. Gorman, Asst. Corp. Counsels, Washington, D. C., at the time the brief was filed, were on brief, for appellees.

Before BAZELON, McGOWAN and MacKINNON, Circuit Judges.

Opinion for the Court filed by BAZELON, Circuit Judge.

Concurring opinion filed by MacKINNON, Circuit Judge.

BAZELON, Circuit Judge:

Appellants, prisoners in the D.C. Jail, filed this action for declaratory and injunctive relief contesting the constitutionality of segregating alleged or confessed homosexuals in D.C. Jail without a hearing. The district court sustained defendant D.C. officials' motion to dismiss for lack of jurisdiction, holding that the prisoners' claims did not satisfy the requisite amount in controversy of $10,000 as required under 28 U.S.C. § 1331(a). We reverse, concluding that the prisoners had in fact sustained their burden of establishing the jurisdictional amount.

### I

The named plaintiffs, at the time this case was filed, were a pre-trial detainee, a prisoner awaiting sentencing, an escapee awaiting transportation to a federal facility and a sentenced prisoner. They sought to represent a class of all accused or confessed homosexual prisoners subject to D.C. Jail's alleged policy of segregating these individuals without a hearing or other adequate procedural safeguards, solely on the basis of their alleged sexual orientation. The plaintiffs alleged that several consequences follow the decision to place an alleged homosexual in administrative segregation: placement in an overcrowded and vermin infested cell which is inferior to those occupied by both the general inmate population and

* Entered appearances as student counsel pursuant to Rule 20 of the General Rules of this Court.

those under administrative segregation for other reasons; ineligibility for work detail (precluding both the accumulation of "good time" which would shorten the period of confinement and the opportunity to earn wages while incarcerated); denial of access to the library and law library; restricted visiting rights; inferior medical treatment; and denial of a variety of other privileges available to the general inmate population. As a result, plaintiffs claimed they were being deprived of rights secured by the 1st, 4th, 5th, 6th and 8th Amendments.

Without taking specific issue with any of the plaintiffs' allegations, the D.C. officials moved to dismiss the action, asserting that none of the allegations was sufficient to put $10,000 in controversy. After hearing argument on the motion to dismiss, the District Court concluded that the prisoners' allegations failed to meet the burden of establishing the requisite amount and dismissed the complaint, relying on our decision in *Gomez v. Wilson*, 155 U.S.App.D.C. 242, 477 F.2d 411 (1973).

## II

■ In *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court set forth the standard for determining whether a complaint for declaratory or injunctive relief satisfies the requisite amount in controversy under 28 U.S.C. § 1331(a) (1976). The Court there held that a complaint should not be dismissed for want of the requisite jurisdictional amount unless it appears "to a legal certainty" that the plaintiff's claim does not amount to $10,000.[1] In assessing whether a complaint satisfies that standard, a court may look either to "the value of the right that plaintiff seeks to enforce or to protect"[2] or to the cost to the defendants to remedy the alleged denial.[3]

■ Plaintiffs' allegations, that the complained-of practices result in a substantial deprivation of their liberty without adequate procedural safeguards, are clearly sufficient to meet their burden of establishing the requisite amount under the standard enunciated in *Hunt*. In *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 50–1, 478 F.2d 938, 960–61, *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973), we found that the requisite $10,000 was satisfied by plaintiffs' allegations of even a short period of unlawful confinement. The view that alleged deprivations of liberty may be sufficient to establish the requisite amount in controversy has been echoed in subsequent decisions of this court[4] and has found expression recently in *Campbell v. Magruder*, 188 U.S.App.D.C. 258, 580 F.2d 521 (1978), where we substantially affirmed

1. *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 346–348, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The Court thus applied to injunctive actions the rule long applied in suits for damages. *See, e. g., St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.") *See* 1 Moore's Federal Practice § 0.92[1] at 855 (2d ed. 1976); 14 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3702 (1976).

2. 14 Wright, Miller & Cooper, *supra*, § 3708 at 473; *see Hunt v. Washington Apple Advertising Commission, supra*, 432 U.S. at 347, 97 S.Ct. 2434.

3. *Tatum v. Laird*, 144 U.S.App.D.C. 72, 76 n.6, 444 F.2d 947, 951 n.6 (1971) *rev'd on other grounds*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); *see generally* 1 Moore's Federal Practice, *supra*, ¶ 0.91[1]; 14 Wright Miller & Cooper, *supra*, § 3703; C. Wright, Federal Courts § 34 (3d ed. 1976).

4. *E. g., Payne v. Government of District of Columbia*, 182 U.S.App.D.C. 188, 207–08, 559 F.2d 809, 828–29 (1977) (Tamm, J., concurring).

Thus, for jurisdictional purposes, this court has found that some twelve hours of alleged false imprisonment sufficed by itself to satisfy the $10,000 amount requirement. *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 50–1, 478 F.2d 938, 960–61 n.34, *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). Similar valuations were reached in *Apton v. Wilson*, 165 U.S.App.D.C. 22, 34, 506 F.2d [83] *supra* at 95 (fourth and fifth amendment violations) and *Hartigh v. Latin, supra*, 158 U.S.App.D.C. 289, 293, 485 F.2d [1068] at 1072 (fifth and eighth amendment violations). *See also id.* 182 U.S.App.D.C. at 199–202, at 820–23 (Robinson, J.).

a judgment for plaintiff pretrial detainees in a § 1331(a) suit for declaratory and injunctive relief challenging the overcrowded and unsanitary conditions prevailing in the D.C. Jail.[5]

The plaintiffs' allegations in this case raise issues of unconstitutional deprivation of liberty similar to those addressed in both *Sullivan* and *Campbell*, both brought under § 1331(a). As a result of their administrative segregation as homosexuals, plaintiffs assert that they are precluded from earning "good time" through participation in work details, and are thus deprived of an opportunity to shorten the period of their confinement. Further, plaintiffs claim that they are confined in overcrowded and unsanitary conditions. Thus on this record it is far from a legal certainty that the plaintiffs' rights are worth less than $10,000—on the contrary, our decisions establish that for jurisdictional purposes these allegations alone establish the requisite amount.

Plaintiffs' other allegations furnish additional support for concluding that the requisite amount in controversy is present. Here plaintiffs allege that they are deprived of medical care, recreational opportunities, use of library and law library facilities afforded to other prisoners, and are publicly branded as homosexuals, without an opportunity for a hearing or other procedural safeguards. These allegations are strikingly similar to those in *Committee for GI Rights v. Callaway*, 171 U.S.App.D.C. 73, 518 F.2d 466 (1975), where we sustained the district court's jurisdiction under § 1331(a) to consider allegations that the Army's drug abuse prevention plan was unconstitutional.[6]

The District Court's reliance on our decision in *Gomez v. Wilson, supra,* is misplaced. In *Gomez* we noted that when a defendant controverts the plaintiff's assertion that the claim meets the jurisdictional amount, "a factual issue emerges and the burden of establishing jurisdictional amount is thrust upon claimant." 155 U.S.App.D.C. at 251, 477 F.2d at 420 (footnotes omitted). In *Gomez,* however, we were concerned with a "formal allegation of jurisdiction," *id.,* one which simply recites that the amount in controversy exceeds $10,000. Where the allegation is merely formal, the record before the district judge may be insufficient to determine whether the plaintiff has met the burden of establishing jurisdiction. Here,

---

5. *Campbell v. Magruder* is currently on remand to the district court for a determination of whether D.C.'s New Detention Facility has alleviated the unconstitutional conditions prevailing in the old D.C. Jail, and for clarification and further consideration of certain provisions of the district court's order of November 5, 1975. *Campbell v. Magruder,* 580 U.S.App.D.C. 258 at 280, 288–290, 580 F.2d 521 at 543, 551–553 (1978).

6. In *Committee for GI Rights v. Callaway,* 171 U.S.App.D.C. 73, 80, 518 F.2d 466, 473 (1975) we observed:

All of the plaintiffs-appellees were subjected to drug inspections and the challenged poster regulation. In addition, various administrative measures were taken against named plaintiff-appellees, including withdrawal of passes, suspension of drivers' licenses, confiscation of civilian clothing, selective urinalysis testing, and public identification as suspected drug users. The constitutional issues raised by the plaintiff are not frivolous. Given the serious nature of the injuries alleged and the consequences that the individual GI may suffer as a result of the challenged drug program, we cannot say that the value of the rights of each of the plaintiffs affected by the Army's drug program does not satisfy the § 1331(a) jurisdictional amount.

The alternative basis for concluding that plaintiffs had satisfied the jurisdictional amount in *Committee for GI Rights*—the potential cost to the defendants—also supports a finding of the requisite amount here.

The cost to the Army . . . would be the cost of (1) stopping the drug inspections entirely or providing a warrant procedure for inspections; (2) providing a hearing prior to the imposition of administrative measures; (3) eliminating other challenged aspects of the drug program, *i. e.,* the poster regulation. Considering both i. the prospective tangible cost of additional hearings and intangible cost of drug abuse among personnel as the result of an adverse ruling, we agree with the district court that the cost to the defendants might well exceed $10,000.

*Id.*

The relief sought by plaintiffs in the instant case is similar to that sought in *Committee for GI Rights,* and thus warrants the conclusion that the cost "might well exceed $10,000."

however, plaintiffs' pleadings go well beyond a formal allegation and detail a number of alleged constitutional violations which in the past have been found sufficient to sustain jurisdiction. Thus plaintiffs' pleadings contain the "clear cut presentation," as required by *Gomez*, which makes it possible to determine that it is not legally certain that plaintiffs' claim is worth less than $10,000. *Id.*[7]

Thus, we conclude that on this record plaintiffs have shown that it does not appear to a legal certainty that their claim is for less than the jurisdictional amount and, accordingly, the complaint should be reinstated.[8] The judgment of the district court is therefore

*Reversed.*

MacKINNON, Circuit Judge, concurring:

I agree with the result reached in this case solely on the ground that the record does not permit a finding to a legal certainty that the $10,000 jurisdictional amount of 28 U.S.C. § 1331 was not satisfied. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 346, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In so deciding I do not conclude that the prisoners by any evidentiary proof have "sustained" any showing that their claims actually have a value of $10,000 or more.

Appellants complain that they are denied various constitutional rights because as "confessed homosexual prisoners or pretrial detainees [apparently non-admitted homosexuals]" they are administratively segregated from other male prisoners at the District of Columbia Jail. It would seem hardly doubtful that there is a need for segregating "confessed homosexuals" from other prisoners. In fact, if the cases that have reached this court are any criterion, more provable damage might result if the homosexuals were *not* segregated. But there is room for complaining by the "accused . . . homosexuals" that they were not *proven* homosexuals and *should not* have been segregated absent reasonable proof thereof.[1] Also, once segregated they are entitled to satisfactory conditions of confinement. Since there are allegations that some of their conditions of confinement are unsatisfactory and that their movement is otherwise unreasonably restricted, I concur in the remand.

I also specifically disagree with the reference to *Campbell v. Magruder*, 188 U.S.App. D.C. 258, 580 F.2d 521 (1978), which is on remand to the district court, since its factual base has no relevance to the issue here presented. The multitudinous claims asserted in that case are hardly authority that such a period of unlawful confinement as

---

**7.** Any suggestion in *Gomez* that claims for equitable relief are subject to a standard more stringent than the "legal certainty" test is of course dispelled by the Supreme Court's decision in *Hunt* that the legal certainty test applies equally to suits for injunctive relief as well as damages.

**8.** Plaintiffs also seek to establish jurisdiction under the recent amendment to § 1331(a) which eliminated the amount in controversy requirement for suits against federal officials. P.L. 94–574, § 2, 90 Stat. 2721 (1976). Although our disposition of this case makes it unnecessary to decide whether D.C. officials are federal officials for the purpose of § 1331(a), we note that this amendment to § 1331(a) may have created an anomaly in federal jurisdiction which places a unique burden on civil rights plaintiffs suing District officials. Under 28 U.S.C. § 1343(3), plaintiffs whose constitutional rights are violated by the actions of *state officials* can sue in federal

court without regard to the amount in controversy. By virtue of the amendment to § 1331(a), plaintiffs whose rights are violated by *federal officials* also need not establish the amount in controversy in order to obtain a federal forum for the vindication of constitutional rights. But under the Supreme Court's decision in *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), § 1343(3) is unavailable to plaintiffs suing *D.C. officials*. Thus if suits against D.C. officials do not fall within the amendment to § 1331(a), only plaintiffs suing D.C. officials will be required to establish a minimum amount in controversy in order to obtain a federal forum for redressing violations of constitutional rights by official action.

**1.** One of three plaintiffs alleges he did not sign the sheet admitting homosexuality. He does not assert that he is not a homosexual.

was alleged in this case satisfies the $10,000 jurisdictional prerequisite.