**William WATERS, individually and on behalf of all those similarly situated, Plaintiff,**

**v.**

**James GROSFELD and Nancy Grosfeld, Defendants.**

**No. 95–CV–73108–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 17, 1995.

Laurence M. Scoville, Jr., Clark, Klein, Detroit, MI, Neil A. Goteiner, C. Brandon Wisoff, Farella, Braun, San Francisco, CA, Eric G. Lipoff, Raring & Lipoff, Costa Mesa, CA, for plaintiff.

Stephen Wasinger, Robert M. Jackson, Honigman Miller, Detroit, MI, Lawrence G. Campbell, Mary B. Kelly, Dickinson, Wright, Detroit, MI, Martin Kaminsky, Pollack & Kaminsky, New York City, for defendants.

### ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On September 7, 1995, the Defendants, James and Nancy Grosfeld, filed a motion to dismiss the instant case for lack of subject matter jurisdiction. William Waters, the purported representative of a class of Plaintiffs, has opposed the motion. For the reasons that have been set forth below, the Defendants' motion will be granted.

## I

This case arises out of a class action that was filed in Florida in 1990. *See William Waters and Linda Bartholomew v. Int'l Precious Metal Corp.,* Case No. 90–6863–Civ (the Florida Action). In that action, William Waters and Linda Bartholomew, the class representatives of approximately 22,000 investors, alleged federal commodities fraud and related claims in connection with the activities of a commodity options telemarketing company, MultiVest Options, Inc. (MOI), which is owned by James Grosfeld.[1] The Florida Court has determined that James Grosfeld may be personally liable for any violations committed by MOI.

During the pendency of the Florida action, the class representatives alleged that James Grosfeld had fraudulently transferred assets from his personal estate to the estate of his wife, Nancy Grosfeld, in an effort to defeat the class' ability to enforce a potential judgment. However, they were unable to seek the voidance of the transfers because the Florida court did not have personal jurisdiction over the transferee, Nancy Grosfeld. As a result, the class filed this lawsuit against Nancy Grosfeld, a resident of Michigan, in an effort to obtain relief under the Uniform Fraudulent Conveyance Act.[2]

## II

1. *Amount in Controversy Requirement*

The Defendants have argued that diversity jurisdiction does not exist in this case because each class member must meet the $50,-000 amount in controversy requirement. *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973). The

---

1. The license of MOI was revoked in 1990 by the Commodity Futures Trading Commission for its fraudulent sales practices.

2. The instant action was not filed by both class representatives in the Florida action, but only by William Waters. The Plaintiffs readily admit that the inclusion of Linda Bartholomew as a class representative would have destroyed the diversity of citizenship upon which jurisdiction rests in this case.

Plaintiffs readily admit that not all class members claim $50,000 or more in damages. However, they submit that this does not represent a procedural obstacle to diversity jurisdiction in this case.

### a. *Background*

In *Zahn,* the United States Supreme Court held that, in class actions involving plaintiffs with separate and distinct claims, each class member's claim has to exceed the jurisdictional minimum which has been set forth in 28 U.S.C. § 1332 in order for diversity jurisdiction to exist. Historically, federal courts have adhered to this standard. *See, e.g., Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1195 (6th Cir.1988).

▮ In 1990, Congress enacted 28 U.S.C. § 1367, which reads in pertinent part as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

> (b) In any civil action of which the district courts have original jurisdiction founded solely on Section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rules 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such Rules, when exercising supplemental jurisdiction over such claims

would be inconsistent with the jurisdictional requirements of Section 1332.

This statute gave power to the district courts to exercise jurisdiction over a claim that is related to another claim over which a district court has jurisdiction.

Congress restricted its grant of supplemental jurisdiction in Section 1367 with the language of subsection (b), which enumerates specific exceptions to the grant of supplemental jurisdiction. Notably, this subsection does not include Federal Rule of Civil Procedure 23 which allows the joinder of parties through the class action mechanism. On the basis of this omission, many district courts have held that Section 1367 overrules *Zahn,* concluding that it allows district courts to exercise supplemental jurisdiction over the claims of the class members if the claim of the class representative satisfies the jurisdictional amount requirement of diversity actions. *See, e.g., Lindsay v. Kvortek,* 865 F.Supp. 264, 276 (W.D.Pa.1994). Nevertheless, many other district courts have disagreed, holding that the legislative history of Section 1367 suggests that Congress did not intend to overrule *Zahn. See, e.g., Henkel v. ITT Bowest Corp.,* 872 F.Supp. 872, 877 (D.Kan.1994). No Michigan court has ever resolved this issue.

To date, only one circuit has addressed the district court split. In *In re Abbott Labs.,* 51 F.3d 524 (5th Cir.1995), *reh'g en banc denied,* 65 F.3d 33 (5th Cir.1995), the Fifth Circuit Court of Appeals concluded that Section 1367 overrules *Zahn.* Although the court acknowledged that the legislative history indicated an intent not to affect *Zahn,* the court nevertheless concluded that it would be improper to look beyond the plain language of the statute because it was unambiguous. *Id.* at 528.[3]

The Plaintiffs argue that the Court need not reach the issue of whether *Zahn* was overruled by Section 1367 in order to find diversity jurisdiction in this case. They maintain that even if *Zahn* is good law, it

---

**3.** The maxim that the "statute is the sole repository of congressional intent where the statute is clear and does not demand an absurd result" is well established. *West Virginia University Hosps., Inc. v. Casey,* 499 U.S. 83, 99–100, 111

S.Ct. 1138, 1147–48, 113 L.Ed.2d 68 (1991); *see also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 30, 109 S.Ct. 2273, 2296, 105 L.Ed.2d 1 (1989) (plain language of statute controls even if contrary legislative history exists).

provides an exception to the $50,000 individual jurisdictional amount requirement which would entitle them to bring their claim for fraudulent conveyance in federal court. Specifically, it is the Plaintiffs' position that they have a "common and undivided interest" in the entire fraudulent conveyance which obviates the need for each of them to satisfy the individual jurisdictional amount requirement in order for diversity jurisdiction to exist. Inasmuch as the Plaintiffs' argument, if correct, would obviate the need for this Court to determine whether, in its opinion, the Fifth Circuit adequately settled the district court split, the Court will address their argument first.

### b. *Common and Undivided Claim*

*Zahn* states in pertinent part:

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."

414 U.S. at 294, 94 S.Ct. at 508 (*quoting Troy Bank of Troy, Ind. v. G.A. Whitehead & Co.,* 222 U.S. 39, 40–41, 32 S.Ct. 9, 9–10, 56 L.Ed. 81 (1911)).

■ The Plaintiffs submit that *Zahn* recognizes an exception to the individual jurisdictional amount requirement. Under *Zahn,* if their lawsuit seeks to obtain redress for a common and undivided interest in an amount that is equal to or in excess of $50,000, the individual jurisdictional amount requirement for class actions (if any remains after the passage of Section 1367) is inapplicable.

The Plaintiffs claim that they do not seek to collect individual damages from the Defendants in this case. Rather, it is their collective view that they are merely attempting to obtain the return of those assets which, in their opinion, were fraudulently transferred

from James Grosfeld's individual estate to the estate of his wife, Nancy Grosfeld. Thus, they assert that, in resolving the issues in this case, the Court will not be asked by them to decide the amount of damages to which each class member is entitled. Rather, the Plaintiffs contend that they seek, among other things, a judicial determination of whether a fraudulent transfer took place. In essence, they argue that their claim is akin to creditors of a bankruptcy estate who seek to invalidate a fraudulent conveyance, in that they seek to increase or preserve the size of the estate upon which to satisfy a judgment. Asserting that the focus in this type of litigation is upon the general right of the class to which they are members, *see In re Fletcher,* 176 B.R. 445, 452 (W.D.Mich. 1995) ("a fraudulent conveyance or other avoidable transfer action, by definition, redresses a general harm to all creditors, not an individualized injury to a particular creditor...."), the Plaintiffs urge the Court to adjudicate these claims as being common and undivided to their class.

■ The Court disagrees. An undivided claim is one "which neither [plaintiff] can enforce in the absence of the other." *Troy Bank v. G.A. Whitehead and Co.,* 222 U.S. 39, 40, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911). *See also Holt v. Lockheed Support Systems, Inc.,* 835 F.Supp. 325, 329 (W.D.La.1993) ("The key thread running throughout these cases is that the presence of each plaintiff in the suit is necessary and indispensable for the recovery of their common right"). This Court is unaware of any law that would preclude the Plaintiffs from pursuing this fraudulent conveyance issue on an individual basis. Although the issue may be common to the class, it is not an undivided claim. Thus, the *Zahn* exception to the individual jurisdictional amount requirement is inapplicable to this controversy. Therefore, the Court must now address the issue of whether *Zahn,* as it relates to the individual jurisdictional amount requirement issue, remains good law.[4]

---

4. In support of their position on the diversity jurisdiction issue, the Plaintiffs maintain that this Court has supplemental jurisdiction under 28 U.S.C. § 1367 because this action is ancillary to the original federal question lawsuit over which the Florida court has jurisdiction. This argument is without merit. The statute upon which the Plaintiffs rely provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in

### c. *Viability of the Zahn Rule*

In finding that Section 1367 had overruled *Zahn,* the Fifth Circuit Court of Appeals declined to consider the legislative history of this statute because it concluded that the applicable statutory language was clear and unambiguous. *Id.* at 528. This interpretation of Section 1367 will be rejected.

■ It is true that the plain language of a statute controls whenever it is unambiguous even if the legislative history suggests a contrary reading. *See Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 30, 109 S.Ct. 2273, 2296, 105 L.Ed.2d 1 (1989). However, Section 1367 is far from unambiguous. The failure of the statute to expressly cover class actions, especially in light of *Zahn,* renders its scope very ambiguous. As one court pointed out, "[i]t is unlikely that so much scholarly effort would have been expended on the meaning and purpose of § 1367 if its meaning were clear." *Leroy Cattle Co., Inc. v. Fina Oil & Chemical Co.,* 1994 WL 151105, *13–14 (D.Kan. March 2, 1994). Therefore, it is imperative that this Court look to the legislative history of the statute in order to determine its reach with respect to class actions.

The legislative history of Section 1367 states:

> [I]n *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Supreme Court cast substantial doubt on the authority of the federal courts to hear some claims within supplemental jurisdiction.... This section would authorize jurisdiction in a case like *Finley,* as well as essentially restore the pre-*Finley* understandings of the authorization for and limits on other forms of supplemental jurisdiction.... This section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class ac-

tions, as those requirements were interpreted prior to *Finley.*

H.R.Rep. No. 734, 101st Cong., 2nd Sess. 28–29, *reprinted in* 1990 U.S.C.C.A.N. 6860, 6874–75.

■ The legislative history of Section 1367 is quite clear. *Finley* is a pre-Section 1367 case in which the plaintiff in a federal tort claims case was not allowed to append those state law claims that arose out of the same facts against non-diverse defendants. *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). The legislative history of Section 1367 reveals that this statute was drafted in order to counter the effects of *Finley* (e.g., to allow courts to exercise supplemental jurisdiction over state law claims which involved additional non-diverse parties in federal question cases), and return supplementary jurisdiction law to its pre-*Finley* state. Importantly, the legislative history also expresses the congressional intention that Section 1367 not adversely affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as interpreted prior to *Finley.*

*Zahn* is a pre-*Finley* case. Given this legislative history of Section 1367, it is clear that Section 1367 does not obviate the force and effect of *Zahn.* Accordingly, this Court concludes that the mandate of *Zahn* (i.e., each class member's claim must meet the jurisdictional amount requirement of $50,000 in order for diversity jurisdiction to exist) remains good law.[5]

### III

The unchallenged record in this cause reflects that the class members in the instant case do not meet the *Zahn* $50,000 jurisdictional amount requirement. Therefore, the Defendants' motions shall be granted, and, as

---

the action within such original jurisdiction that they form part of the same case or controversy." Contrary to the Plaintiffs' assertion, this language has never been interpreted to mean that a district court has supplementary jurisdiction over an action that is pending in another district court on the basis that the cases are related. Not surprisingly, the Plaintiffs have not cited a single case which allows for such a broad interpretation of the Section 1367.

5. In support for their motion, the Defendants also claimed that the Plaintiffs' failure to name Bartholomew as a class representative in this case amounts to a manipulation of the rules of diversity jurisdiction. In light of the conclusion by this Court (to wit, *Zahn* constitutes good law), this argument is moot and, therefore, will not be addressed.

a result, this case must be dismissed for lack of diversity jurisdiction.

IT IS SO ORDERED.