William **CROSBY, et al., Plaintiffs,**

v.

**AMERICA ONLINE, INC., Defendant.**

No. 1:97 CV 263.

United States District Court,
N.D. Ohio,
Eastern Division.

April 30, 1997.

Patrick J. Perotti, Dworken & Bernstein, Painesville, OH, for Plaintiffs.

Michael J. Garvin, Deborah Coleman and Sharon Riegel, Hahn, Loeser & Parks, Cleveland, OH, Lucia Nale, Mayer, Brown & Platt, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

OLIVER, District Judge.

The Plaintiffs, William Crosby and one other as representatives of a class, sue for equitable and monetary relief alleging Ohio law claims against the Defendant, America Online, Inc. ("AOL"). AOL sells access to the computer generated international marketplace for information and communication known as "the internet." The prospective class of Plaintiffs would include all Ohio customers of AOL since December 1, 1996, who paid a flat fee for access to AOL. The class is

composed of approximately 270,000 members [1].

The Plaintiffs allege that on December 1, 1996, AOL switched from a metered rate of payment for its services to a flat monthly rate for "unlimited" access to the internet. According to the Plaintiffs, that change resulted in a dramatic increase in the number of AOL clients and AOL sold its service to more persons than its equipment had the ability to handle. As a result, AOL was unable to connect all of its customers to the internet in a timely manner, thereby preventing AOL customers from actually receiving unlimited access to the internet. On that basis, the Plaintiffs bring claims for, *inter alia*, breach of contract, fraud and violation of the Ohio Consumer Sales Practices Act. They seek injunctive relief preventing AOL from advertising or selling its services to new customers without an appropriate disclaimer, money damages "not to exceed $45,000 per class member," attorney's fees, costs and any other appropriate relief.

The Plaintiffs originally filed their claims in the Court of Common Pleas for Cuyahoga County, Ohio. AOL removed the case to this court under 28 U.S.C. § 1441(a) on the ground that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Plaintiffs now move the court to remand the case pursuant to 28 U.S.C. § 1447(c), arguing AOL cannot show this case meets the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a). Because the court finds it does not have jurisdiction over this case, it grants the motion. For the reasons stated herein, this case is remanded to the Court of Common Pleas for Cuyahoga County, Ohio, where it was originally filed.

## I. STANDARD FOR REMAND

■ Initially, the court must determine the proper standard for determining whether it has jurisdiction over this case, and upon which party lies the burden of proving jurisdiction. The relevant jurisdictional statute confers upon this court the power to adjudicate "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1).

■ Generally, the party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction. *McNutt v. Gen'l Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (declaring that "the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence"). In this case, then, it is AOL that bears the burden of proving jurisdiction, because the Plaintiffs would prefer to have stayed in state court, where they first filed their case.

When a plaintiff originally files her claim in federal court, the sum claimed by the plaintiff controls for the purpose of assessing whether the amount-in-controversy requirement contained in 28 U.S.C. § 1332(a)(1) is satisfied, so long as the amount claimed appears to have been made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938). Such a case will not be dismissed for lack of diversity jurisdiction unless the defendant can demonstrate to a "legal certainty" that the plaintiff was in error regarding the claimed amount-in-controversy. *Id.* at 289, 58 S.Ct. at 590. The "legal certainty standard" also applies when the plaintiff originally files her complaint in *state* court alleging a specific amount of damages and the defendant removes the case to federal court. *Gafford v. General, Elec. Co.,* 997 F.2d 150, 157 (6th Cir.1993). Normally, then, if a plaintiff claims in good faith an amount-in-controversy exceeding $75,000, federal jurisdiction is obtained.

■ The standard differs, though, "where the plaintiff seeks to recover some *unspecified* amount that is not self-evidently greater or less than the federal amount-in-controversy requirement." *Id.* at 158 (citation omitted). In such cases, "the defendant must prove, 'more likely than not,' that the

---

1. At an April 17, 1997, status conference on the motion to remand, AOL's counsel stated that there are 265,000 current Ohio AOL subscribers, plus an additional 5,000 former subscribers who meet the class requirements.

plaintiff's claims meet the federal amount-in-controversy requirement[2]." *Id.* (granting a motion for reconsideration where the defendant satisfied its burden on removal of showing the plaintiff's claims exceeded the amount-in-controversy requirement) (citation omitted). The court applies that preponderance of the evidence standard herein, since the Plaintiffs' claims for fraud (which would allow recovery of punitive damages) and for attorney's fees make it impossible to say they seek to recover an amount self-evidently less than $75,000. *See, Garza v. Bettcher Indus., Inc.,* 752 F.Supp. 753, 763 (E.D.Mich.1990) (applying the preponderance of the evidence standard in finding the defendant had shown the case met the amount-in-controversy requirement). Thus, the court must remand this action unless AOL can show by a preponderance of the evidence that the Plaintiffs' claims meet the amount-in-controversy requirement.

## II. LAW AND ANALYSIS

### A. *Amount-in-Controversy in Class Claims*

#### 1. *Aggregation of Class Claims*

■ The Plaintiffs do not dispute the diversity of citizenship between AOL and the putative plaintiff class. However, they do challenge AOL's assertion that the "matter in controversy exceeds the sum or value of $75,000." Specifically, the Plaintiffs assert that the amount in controversy must exceed $75,000 for *each* of the 270,000 plaintiffs in the putative class, an amount that would exceed a total of $20 billion[3]. The Plaintiffs conclude that because there is no realistic possibility the plaintiff class could actually recover damages approaching that amount, this court must remand the case for lack of diversity jurisdiction.

AOL responds by noting that the Plaintiffs have demanded attorney's fees and punitive damages. AOL argues that an award of attorney's fees and punitive damages is not properly allocated pro rata to each class member; rather, any award of punitive damages and attorney's fees should be "aggregated," so that a total award in this case—including compensatory damages, attorney's fees and/or punitive damages—exceeding $75,000 would suffice to meet the amount-in-controversy requirement of 28 U.S.C. § 1332. AOL asserts that it is entirely reasonable to expect the total award in this case could exceed $75,000, so the court should exercise jurisdiction and deny the motion to remand.

■ The court agrees with AOL that in addition to compensatory damages, potential awards of attorney's fees and punitive damages can count toward the amount-in-controversy. *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1168 (6th Cir.1975) (stating, "a statutory attorney's fee can be considered in determining whether the jurisdictional amount is met"); *Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir.1983) (holding that "[a] punitive damage claim must be included [in the amount-in-controversy] unless such damages are barred by the applicable state law"). Thus, the critical question in this case becomes whether potential awards of compensatory damages, attorney's fees or punitive damages should be "aggregated," instead of measured pro rata.

If each Plaintiff's share of a potential award of attorney's fees or punitive damages may be aggregated to meet the jurisdictional amount, AOL need only show it is more likely than not that such a potential award will exceed $75,000. On the other hand, if each Plaintiff's share of a potential award of attorney's fees or punitive damages must be allocated pro rata, AOL must show it is more likely than not that such a potential award will exceed $20 Billion. Effectively, if the potential award may be aggregated, AOL carries its burden of proving the court has

---

**2.** If a plaintiff's complaint specifies she seeks less than the amount-in-controversy requirement, the defendant bears a "substantial likelihood" or "reasonable probability" burden when defending removal of the case. *Gafford,* 997 F.2d at 157–158 (citations omitted).

**3.** Multiplication of the number of class members times the jurisdictional requirement shows an award of $20,250,000,000.00 would be required to achieve diversity jurisdiction. At the April 17, 1997, case management conference, AOL's counsel conceded that AOL cannot satisfy the amount-in-controversy requirement if the court does not aggregate the value of the class claims.

jurisdiction. If the potential award may not be aggregated, AOL has not carried its burden. The court concludes it should not aggregate each Plaintiff's share of potential awards of compensatory damages, attorney's fees or punitive damages, and thus, that it does not have jurisdiction in this case.

■ In general, aggregation is appropriate only "when two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.'" *Sellers,* 701 F.2d at 579 (quoting *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319(1969)). Such an interest exists when, "if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." *Id.* The *Sellers* court found the class claims could not be aggregated because "each plaintiff seeks to receive a fixed sum." *Id.* The same is true in this case. The Plaintiffs have distinct interests in their claims because, as in *Sellers,* they sue under their individual contracts with AOL. *See, More v. Intelcom Support Servs., Inc.,* 960 F.2d 466, 472–473 (5th Cir. 1992) (refusing to aggregate class action claims for amount-in-controversy purposes where workers sued the same employer under their individual employment contracts).

■ Moreover, when based upon such separate claims, attorney's fees should not be aggregated or viewed as part of a common fund, but should be assessed on a pro rata basis. *Goldberg v. CPC Int'l, Inc.,* 678 F.2d 1365, 1367 (9th Cir.), (refusing to find that class action attorney's fees are to be treated as a common fund), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982); *cf., In re Abbott Labs.,* 51 F.3d 524, 526 (5th Cir.1995) (declaring the plaintiffs' attorney's fees claim to be a common fund based on a specific Louisiana statutory requirement that fees be awarded only to the class representative). The rule is the same for punitive damages. *Gilman v. BHC Sec., Inc.,* 104 F.3d 1418, 1428–1431 (2d Cir.1997) (declining to aggregate punitive damages where they would be based on underlying class claims that were separate and distinct); *cf., Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1333 (5th Cir.) (finding Mississippi law made the plaintiffs' punitive damages claim collective,

and thus, aggregable), *rehearing en banc denied,* 70 F.3d 26 (5th Cir.1995) (per curiam) (adding, "the opinion in this case specifically reflects a result under the Mississippi law of punitive damages and is not to be construed as a comment on any similar case that might arise under the law of any other state"). Because the Plaintiffs sue on their individual contracts, allowing AOL to aggregate compensatory damages, attorney's fees or punitive damages would allow them to circumvent the policies set forth in *Sellers* and subsequent cases.

### 2. *Supplemental Jurisdiction*

■ AOL argues, in the alternative, that any award of attorney's fees and punitive damages should be allocated to the named Plaintiffs alone. They contend the court would then have supplemental jurisdiction over the other class claims under 28 U.S.C. § 1367. The law is clear, however, that just as attorney's fees or punitive damages are not to be generally viewed as part of a common fund for purposes of determining the amount-in-controversy as discussed above, it is inappropriate to consider such fees and/or damages as being only attributable to the named Plaintiffs. Instead, the fees and/or damages must be prorated. *See, Goldberg,* 678 F.2d at 1367 (rejecting the arguments "that the potential attorneys' fees should be attributed to the named plaintiffs only, rather than pro rata to each class member, or, in the alternative, that the potential fees should be attributed to the class as a whole and treated as a common fund"); *Garcia v. Gen'l Motors Corp.,* 910 F.Supp. 160, 166 (D.N.J.1995) (rejecting the argument that "an award of punitive damages [is] a res in which the Putative Plaintiffs would have a common and undivided interest") (internal quotation marks omitted). The court notes, however, that even if attorney's fees and punitive damages could properly be viewed as attributable only to the named Plaintiffs such that their claims met the amount-in-controversy requirement, it would still be inappropriate to exercise jurisdiction over the entire class.

■ The general rule is that "[e]ach plaintiff in a Rule 23(b)(3) class action must

satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case—'one plaintiff may not ride in on another's coattails.'' *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973) (citation omitted); *see also, Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1195 (6th Cir.1988). Thus, even assuming the named Plaintiffs meet all the jurisdictional requirements, supplemental jurisdiction over other class plaintiffs who do not meet the amount-in-controversy requirement is inappropriate.

AOL argues 28 U.S.C. § 1367 overrules the *Zahn* decision. That statute states in pertinent part:

(a) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) ... when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367. Some courts have held this language means "a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement," so long as the class representatives individually meet the requirement. *Abbott Labs.*, 51 F.3d

at 529; *see also, Deep v. Manufacturers Life Ins. Co.*, 944 F.Supp. 358, 362 (D.N.J.1996) (stating, "the Court holds that Section 1367 overruled *Zahn* "). Other courts disagree, holding that the *Zahn* rule survived the enactment of 28 U.S.C. § 1367. *Bernard v. Gerber Food Prods. Co.*, 938 F.Supp. 218, 224 (S.D.N.Y.1996) (remanding a class action since *Zahn* prevents supplemental jurisdiction over class claims not satisfying the diversity jurisdiction requirements); *Waters v. Grosfeld*, 904 F.Supp. 616, 620 (E.D.Mich. 1995) (dismissing a class action because not every member of the class met the amount-in-controversy requirement); *In re Potash Antitrust Litig.*, 866 F.Supp. 406, 413 (D.Minn.1994) (citing cases holding that § 1367 did not overrule *Zahn*); *Mayo v. Key Financial Servs. Inc.*, 812 F.Supp. 277, 278 (D.Mass.1993) ("[t]he legislative history of 28 U.S.C. § 1367 clearly indicates ... that the statute was not intended to affect the jurisdictional requirements for diversity class actions set forth in *Zahn* "). The Sixth Circuit has not spoken on this issue.

This court finds itself in agreement with those cases holding that the *Zahn* rule has continued vitality, even after the passage of the amendments to 28 U.S.C. § 1367, which broadened supplemental jurisdiction to some extent. The statute is ambiguous regarding whether it was meant to affect the holding in *Zahn*[4]. *See, Waters*, 904 F.Supp. at 620. *But see, Abbott Labs.*, 51 F.3d at 528 (finding § 1367 is unambiguous, and therefore, that its legislative history is irrelevant). The legislative history of the amendments to § 1367 shows "[t]he section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity–only class actions,...." H.R.Rep. No. 734, 101st Cong., 2nd Sess. 28–29, *reprinted in* 1990 U.S.C.C.A.N. 6860,

---

**4.** The existence of this ambiguity is highlighted by the fact that while the *Abbott Labs.* court found § 1367 overrules Zahn, other courts have interpreted that statute as affirming *Zahn*. For example, in *Borgeson v. Archer–Daniels Midland Co.*, 909 F.Supp. 709, 716 (C.D.Cal.1995), the court stated,

it is evident that the plain language of subsection (a) is entirely *consistent* with *Zahn*. Through the incorporation of the language "or as *expressly provided otherwise by federal statute* ", Congress specifically included as an ex-

ception to § 1367(a) any other federal statute, including § 1332 (and its most relevant judicial interpretations *Zahn* and *Snyder*) (emphasis added). Despite references to diversity jurisdiction and § 1332, and with full knowledge of the Supreme Court's long-standing interpretation of that language, nowhere in the Act did Congress change the language of § 1332. In choosing once again to keep the language of § 1332 in its original form, Congress reaffirmed the Supreme Court's historical treatment of the language "matter in controversy".

6874–6875 (footnote omitted), *quoted in Averdick v. Republic Financial Services, Inc.,* 803 F.Supp. 37, 45–46 (E.D.Ky.1992) (remanding a class action because some members failed to meet the jurisdictional amount). The commentary concurs with that view. *See, e.g.,* Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis,* 24 Ariz. L.Rev. 849, 973 (1992). The court thus resolves 28 U.S.C. § 1367's statutory ambiguity by continuing to apply *Zahn* and holding that all members of a class action must meet 28 U.S.C. § 1332's jurisdictional requirements.

Moreover, applying *Zahn* also serves the practical interest of discouraging plaintiffs from the unwarranted creation of federal class action suits through adding unnamed parties who have otherwise insufficient claims. Thus, even if the named Plaintiffs in this case could show they met the amount-in-controversy requirement, the court would not automatically have jurisdiction over the claims of the remaining class members.

AOL has presented no evidence in support of the conclusion that judgment rendered against it would reasonably amount to in excess of $75,000 per Plaintiff, or approximately 20 Billion Dollars. Consequently, the court finds AOL has not met its burden that it is more likely than not that Plaintiffs' claims meet the amount-in-controversy requirement.

### B. *Viewpoint for Determining Amount–in–Controversy*

AOL's final argument is that the court may value the amount-in-controversy based on the costs AOL will incur if the court grants the Plaintiffs' requested injunction. It contends the court should consider the amount-in-controversy from its point of view since, to comply with the requested injunction, "AOL would more likely than not suffer harm in excess of $75,000 in lost revenues." (Notice of Removal ¶ 8.) It cites that figure because of (a) the amount of new business it would lose, (b) the cost of having to cease existing advertising programs, and (c) the cost of discontinuing its old advertising and designing and distributing new advertising. (*Id.*)

■ The general rule is that the amount-in-controversy is determined based on the plaintiff's viewpoint as reflected in her prayer for relief. *Innovative Digital Equip., Inc. v. Quantum Technology, Inc.,* 597 F.Supp. 983, 986 (N.D.Ohio 1984) (denying the defendants' amount-in-controversy challenge based on the damages allegations in the plaintiff's complaint). AOL would have the court rule that when a plaintiff class seeks both monetary and injunctive relief, a court may consider either the value of the plaintiff's requested relief or the cost the defendant will incur if the injunction is granted. There is authority supporting that proposition:

> The trend seems to be that the amount in controversy is met if either the plaintiff's harms or the defendant's costs of compliance will exceed [$75,000]. This rule makes the most sense, because the amount in controversy in a lawsuit exceeds [$75,000] if either the plaintiff or defendant will have to pay that amount.

Erwin Chemerinsky, *Federal Jurisdiction* § 5.3.4 (2d ed.) (1994) (citing *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389 (7th Cir. 1979); *Smith v. Washington,* 593 F.2d 1097 (D.C.Cir.1978)). Another district court recently noted agreement with this rule; "under the test employed in this circuit (although not in all circuits), the court also must look to the amount in controversy from the defendants' perspective." *Civil City of South Bend, Ind. v. Consolidated Rail Corp.,* 880 F.Supp. 595, 599 (N.D.Ind.1995) (citing *Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 329–30 (7th Cir.1993); *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 391–95 (7th Cir. 1979)).

■ This court finds the either-viewpoint test to be the appropriate rule for determining the amount-in-controversy in class actions seeking both monetary and injunctive relief, and looks to AOL's cost of compliance with the Plaintiffs' requested injunction as an alternative means of satisfying the jurisdictional requirement.

Accepting AOL's potential costs as a measure of the amount-in-controversy does not supply jurisdiction in this case. The court must still prorate the cost to AOL in order to determine whether each class member meets the jurisdictional requirement. As the Ninth Circuit has noted,

> [a] finding of jurisdiction in this case would provide Plaintiffs with a means by which to evade the impact of *Snyder* and *Zahn*. If Defendants are allowed to remove such suits to federal court, then Plaintiffs must be allowed to file them in federal court. originally. All that Plaintiffs would need to do to avoid the rule of *Snyder* and *Zahn* would be to pray for an injunction.

*Snow v. Ford Motor Co.*, 561 F.2d 787, 791 (9th Cir.1977).

A defendant should not be able to *aggregate* its potential costs of complying with injunctive relief sought by multiple plaintiffs in order to obtain a federal forum when the plaintiffs cannot do so relative to their claims. While it is proper to look to the cost of AOL's compliance with the requested injunction as an alternative way of measuring whether the amount-in-controversy is met, the amount-in-controversy between each Plaintiff and AOL must still be significant, i.e., in excess of $75,000, exclusive of interest and costs. The appropriate manner to determine the significance of the claims for jurisdictional purposes is to prorate the costs across the total number of Plaintiffs. Since the Plaintiffs could not have aggregated their separate claims in order to reach this court, AOL may not do so upon removing the case. Otherwise, the holding of *Zahn* would be rendered meaningless.

Thus, the jurisdictional requirement will not be met in this case unless it can be said that AOL's cost of complying with the requested injunction will total approximately 20 Billion Dollars. While AOL has argued that its aggregate or total costs of complying with the injunction are clearly in excess of $75,-000, it has not submitted evidence that its costs will amount to a figure in excess of $75,000 per Plaintiff, or a total of approximately 20 Billion Dollars. It thus fails to carry its jurisdictional burden, even when the court considers its costs of compliance with the Plaintiffs' requested injunction.

## III. CONCLUSION

Based on the foregoing analysis, the court holds AOL has failed to carry its burden of establishing by the preponderance of the evidence that these claims meet the amount-in-controversy requirement. The court, therefore, hereby remands this case to the Court of Common Pleas for Cuyahoga County, Ohio, from which it was removed.

IT IS SO ORDERED.