Aaron NELSON, individually and as class representative, Plaintiff,

v.

ASSOCIATES FINANCIAL SERVICES COMPANY OF INDIANA, INC., an Indiana corporation, Defendant.

No. 4:99–CV–126.

United States District Court, W.D. Michigan, Southern Division.

Jan. 25, 2000.

Peter A. Poznak, Currie, Kendall, Polasky & Meisel, PLC, Midland, MI, for Aaron Nelson, plaintiff.

Larry J. Saylor, Miller, Canfield, Paddock & Stone, Detroit, MI, for Associates Financial Services Company of Indiana, Inc., defendant.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

This matter comes before the Court on Plaintiff Aaron Nelson's motion to remand this action to state court pursuant to 28 U.S.C. § 1447.

Plaintiff, a Michigan resident, filed this putative class action in the Berrien County Circuit Court against Defendant Associates Financial Services Company of Indiana, Inc. ("Associates"), an Indiana corporation. Plaintiff alleged violations of the Michigan Usury Statute, M.C.L. § 438.31c; the Michigan Mortgage Brokers, Lenders and Servicers Licensing Act, M.C.L. § 445.1651, et seq.; the Michigan Consumer Financial Services Act, M.C.L. § 487.2051 et seq.; and the Michigan Consumer Protection Act, M.C.L. § 445.901 et seq. Defendant Associates removed the action to this Court, alleging federal question and diversity jurisdiction.

■ Plaintiff contends in his motion for remand that this Court lacks federal question jurisdiction because the action is not preempted by 12 U.S.C. § 1735f–7a, and lacks diversity jurisdiction because the amount in controversy does not exceed $75,000. Defendant, as the party seeking to litigate in federal court, bears the burden of establishing the existence of subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

### *A. Federal Question Jurisdiction*

■ A federal court has original jurisdiction over a federal question when the civil action "arises under" the Constitution,

laws, or treaties of the United States. 28 U.S.C. § 1331. In its notice of removal Defendant alleged that this Court has federal question jurisdiction over this action because Count I of Plaintiff's complaint is preempted by 12 U.S.C. § 1735f–7a.

Plaintiff alleges in Count I that Defendant violated § 1c(2)(c) of the Michigan Usury Statute which provides that on a first mortgage loan for a single family dwelling unit a lender shall not:

> Charge a prepayment fee or penalty in excess of 1% of the amount of any prepayment made within 3 years of the date of the loan, or any prepayment fee or penalty at all thereafter, or prohibit prepayment at any time.

M.C.L. § 438.31c(2)(c).

Defendant contends that M.C.L. § 438.31(c)(2) merely sets forth conditions that must be met to come within an exception to section 1 of the usury statute, M.C.L.A. § 438.31. Defendant further contends that section 1 of the Michigan Usury Statute is completely preempted with respect to first mortgage loans by section 501 of the Depositary Institutions Deregulation and Monetary Control Act of 1980 ("DIDMCA"), 12 U.S.C. § 1735f–7a.

Section 501 of DIDMCA provides in pertinent part:

> (1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—
>
> (A) secured by a first lien on residential real property . . . .
>
> (B) made after March 31, 1980; and
>
> (C) described in section 527(b) of the National Housing Act (12 U.S.C. 1735f–5(b)) . . . .

12 U.S.C. § 1735f–7a.

Defendant contends that Plaintiff's mortgages are governed by § 1735f–7a because they are loans secured by a first lien on residential property, made after March 31, 1980.

In *Shelton v. Mut. Sav. & Loan Assoc.,* 738 F.Supp. 1050 (E.D.Mich.1990), the court held that 12 U.S.C. § 1735f–7a "on its face, expressly preempts state usury limitations that are otherwise applicable to a loan provided that the loan in question meets the descriptive requirements of subsection 1735f–7a(a)(1)(A)–(C)." *Id.* at 1056. *See also Brown v. Investors Mortgage Co.,* 121 F.3d 472, 475 (9th Cir.1997) (DIDMCA preempts state usury law).

Whether a claim arises under federal law for purposes of federal question jurisdiction is governed by the "well-pleaded complaint" rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). If the defense of federal preemption does not appear on the face of the complaint, it is not sufficient to authorize removal to federal court. *Strong v. Telectronics Pacing Systems, Inc.,* 78 F.3d 256, 259 (6th Cir.1996) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)) (citation omitted).

Defendant, however, relies on the "complete preemption" doctrine, a corollary to the well-pleaded complaint rule. The complete preemption doctrine "holds that when Congress intends the preemptive force of a statute to be so extraordinary that it completely preempts an area of state law, 'any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.' " *Strong v. Telectronics Pacing Systems, Inc.,* 78 F.3d 256, 259 (6th Cir.1996) (quoting *Caterpillar Inc.,* 482 U.S. at 393, 107 S.Ct. 2425).

" 'Removal and preemption are two distinct concepts,' and the fact that plaintiffs' claim might ultimately prove to be preempted does not establish that it is removable to federal court." *Id.* at 261

(quoting *Warner,* 46 F.3d at 535). " 'Complete preemption' applies only in the extraordinary circumstance when Congress intends, not merely to preempt a certain amount of state law, but also to transfer jurisdiction to decide the preemption question from state to federal courts." *Musson Theatrical, Inc. v. Federal Exp. Corp.,* 89 F.3d 1244, 1253 (6th Cir.1996). "Absent complete pre-emption, the plaintiffs in a nondiversity action are masters of their complaint and may avoid federal subject-matter jurisdiction by relying exclusively on state law." *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 456 (6th Cir.1996). To date the Supreme Court has found only two federal statutes to have this broad preemptive scope: § 301 of the Labor Management Relations Act, and § 502(a)(1)(B) of the Employee Retirement Income and Security Act. *Strong,* 78 F.3d at 259.

The Sixth Circuit has held that the congressional intent necessary to confer removal jurisdiction upon the federal district courts through complete preemption is expressed through the creation of a parallel federal cause of action that would "convert" a state cause of action into the federal action for purposes of the well-pleaded complaint rule. *Strong,* 78 F.3d at 260–61 (citing *Warner,* 46 F.3d at 534–35).

■ Section 1735f–7a does not create a parallel federal cause of action. Moreover, Defendant has not identified any language in § 1735f–7a to suggest that Congress intended not only to preempt state law, but also to transfer jurisdiction to decide the preemption question from state to federal courts. *See Musson,* 89 F.3d at 1253. Accordingly, this Court concludes that § 1735f–7a does not completely preempt the Plaintiff's state law claims. Defendant's preemption argument may be a defense to Plaintiff's complaint, but it is not sufficient to give this Court federal question jurisdiction over Plaintiff's complaint.[1]

**B. Diversity Jurisdiction**

Defendant argues in the alternative that this Court has diversity jurisdiction. A federal court has diversity jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Plaintiff does not dispute that the citizenship of the parties in this case is diverse. However, Plaintiff contends that the amount in controversy does not exceed $75,000.

Plaintiff alleges in his complaint that he is representative of a class of borrowers from Defendant who, by virtue of having entered into loan agreements with Defendant containing prepayment penalty provisions in violation of M.C.L. § 438.31c, have claims against Defendant. Complaint ¶¶ 48 and 49. Plaintiff estimates that more than 500 loans containing the illegal prepayment penalty provision have been prepaid. Complaint ¶ 47. Plaintiff seeks a judgment against defendant in the amount of $5,318.40 for himself, representing the actual damages he incurred by payment of the prepayment penalty. Plaintiff alleges that his claim is typical of the claims of all the members of the class. Complaint, ¶ 52. Plaintiff seeks a judgment in excess of $25,000 for the actual damages represented by the illegal prepayment penalties included in the loan agreements and paid by class members. Complaint, Relief ¶ d. He also seeks a judgment declaring that prepayment penalty provisions in class member loan agreements with Defendant, which loans have not yet been prepaid, are null and void, and enjoining the Defendant from enforcing the illegal prepayment penalty provisions. Complaint, Relief ¶ e.

■ Defendant contends that the requisite amount in controversy is met because the injunctive relief Plaintiff is requesting would have a detrimental effect

1. Where there is a preemption defense, but not complete preemption, "[t]he federal preemption defense ... would be decided in state court and would be subject to review on certiorari in the U.S. Supreme Court." *Strong,* 78 F.3d at 261 (quoting *Warner,* 46 F.3d at 535).

on Defendant that exceeds $75,000, and because Plaintiff's request for attorney fees will exceed $75,000. Defendant, as the party desiring to remove the case, has the burden of proving the diversity jurisdiction requirements by a preponderance of the evidence. *Gafford v. General Elec. Co.*, 997 F.2d 150, 155 (6th Cir.1993). *See also Ahearn*, 100 F.3d at 453–54.

 As a preliminary matter, the Court observes that Defendant does not contend that the damages claims of the various class members should be aggregated. The general rule is well settled that the claims of the members of a class in a diversity class action may not be aggregated to meet the minimum jurisdictional amount. *Snyder v. Harris*, 394 U.S. 332, 338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

*Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (quoting *Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911)). The individual class members' claims for damages in this action are separate and distinct demands. Defendant correctly recognizes that the damages claims cannot be aggregated for purposes of determining the amount in controversy.

In his complaint, however, Plaintiff has also requested the Court to provide equitable relief. Plaintiff requests the Court to:

> e. Enter its Judgment declaring that prepayment penalty provisions in class member loan agreements with Defendant, which loans have not been heretofore prepaid or subject to collection of prepayment penalty by the Defendant, are null and void, further enjoining the

Defendant from enforcement or attempted enforcement of the illegal prepayment penalty provisions.

Complaint, Relief ¶ e.

Defendant contends that based upon Plaintiff's assertion that his prepayment penalties of $1,479.44 and $3,838.96 are typical of the class, his assertion that there are at least 500 class members who would benefit from injunctive relief, and the fact that an injunction would affect both current and future customers, the cost to Defendant of the injunctive relief requested by Plaintiff greatly exceeds $75,000.

The question posed by Defendant's response to Plaintiff's motion to remand is whether the amount in controversy can be determined with reference to the total detriment to Defendant from the injunctive relief requested.

The federal courts are divided as to the proper perspective to use in determining the amount in controversy. *Ericsson GE Mobile v. Motorola Communications*, 120 F.3d 216, 218 (11th Cir.1997). There is a growing trend to find the amount in controversy to be met if either the plaintiff's harms or the defendant's costs of compliance will exceed $75,000. *See* Erwin Chemerinsky, Federal Jurisdiction § 5.3.4 (2d ed.) (1994). *See also Crosby v. America Online, Inc.*, 967 F.Supp. 257, 263–64 (N.D.Ohio 1997). The majority of courts, however, have adopted the position that in class actions the plaintiff's viewpoint should be followed. Were the court to consider the amount in controversy from the defendant's viewpoint, the rule against nonaggregation could be circumvented. *See Moore's Federal Practice*, 3d ed. § 102.109[6], at 102–202. "A defendant should not be able to aggregate its potential costs of complying with injunctive relief sought by multiple plaintiffs in order to obtain a federal forum when the Plaintiffs cannot do so relative to their claims." *Crosby*, 967 F.Supp. at 265.

Thus, in *Packard v. Provident Nat'l Bank*, 994 F.2d 1039 (3rd Cir.1993), *cert.*

*denied sub nom. Upp v. Mellon Bank,* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993), where the complaint included a demand for injunctive relief, the court rejected the defendant's argument that the jurisdictional amount should be measured not by the damages of the plaintiffs, but by the costs to the defendant in complying with it:

> We decline to do so. In a diversity-based class action seeking primarily money damages, allowing the amount in controversy to be measured by the defendant's cost would eviscerate *Snyder's [Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)] holding that the claims of class members may not be aggregated in order to meet the jurisdictional threshold. We will not permit plaintiffs to do indirectly that which they cannot do directly.

*Id.* at 1050 (citations and footnote omitted).

In *Snow v. Ford Motor Co.,* 561 F.2d 787, 790 (9th Cir.1977), the court refused to consider the "total detriment" that Plaintiff's request for injunctive relief would cause to defendant. The court explained that "total detriment" is basically the same as aggregation. Where "the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation (applies) with equal force to the equitable as well as the monetary relief." *Id.* at 790–91 (citation omitted).

In a class action, the court must determine the nature of the right that would be protected by an injunction in order to set the appropriate value level for each plaintiff. *Shelly v. Southern Bell Telephone & Telegraph Co.,* 873 F.Supp. 613, 616. "[W]here the claims are essentially individual and discrete, the injunction must be looked at as it applies to each plaintiff." *Id.* (citing *Snow,* 561 F.2d 787).

Defendant cites *Bell v. Board of Educ.,* 683 F.2d 963, 966 (6th Cir.1982), for the proposition that "[c]lass actions for injunctive relief fix rights in the aggregate, not individually." *Bell* is of little relevance to this Court's analysis. Neither aggregation of claims, nor valuation of claims from the Defendant's perspective was at issue in *Bell. Bell* involved application of the doctrine of collateral estoppel to a previous school desegregation order. *Id.* Moreover, there is no question that the class in *Bell* was seeking a common and undivided interest in prospective rights on behalf of the entire group.

Defendant has also cited *Crawford v. American Bankers Ins. Co.,* 987 F.Supp. 1408 (M.D.Ala.1997), for the proposition that an injunction which would prevent the defendant from engaging in a certain form of business in the future has no separable value to each member of the prospective class, but instead represents prospective injunctive relief to enforce a single common right, and as such must be valued as an aggregated whole. *Id.* at 1413.

Defendant accurately quotes *Crawford,* but fails to note that this was not the end of the court's analysis. In *Crawford* the court ultimately remanded the action to state court because it determined that when the value of the injunctive relief was considered from the plaintiff's perspective as required under *Ericsson, supra,* it amounted to nothing, at least monetarily. *Id.* at 1415. The defendant had failed to show that the plaintiffs had any monetary interest in the prospective injunctive relief sought. *Id.*

The only case cited by Defendant that appears to support its claim is *Edge v. Blockbuster,* 10 F.Supp.2d 1248 (N.D.Ala. 1997). In *Edge* the plaintiffs sought compensation for an excessive late fee charge and also requested an injunction preventing defendants from charging excessive late fees in the future. The court held that the proposed injunctive relief was a common and undivided interest of the plaintiff class, and that accordingly the aggregate value of the claim for injunctive relief, i.e., the cost of complying with the injunction, should be considered in determining the amount in controversy. *Id.* at 1253.

The reasoning in *Edge* has been rejected by another court in the district:

> Judge Blackburn of this court has suggested that injunctive relief should generally be aggregable because, among other reasons, an injunction is granted class-wide so that "to the extent that one plaintiff is entitled to injunctive relief, all plaintiffs are entitled to injunctive relief." *Edge v. Blockbuster Video, Inc.*, 1997 WL 910414, at *6 (N.D.Ala. 1997). This court must respectfully disagree. In most cases, it is impossible to draw a practical distinction between injunctive relief and a class-wide finding of liability for money damages. At least in class actions involving numerous, small, uniform claims, money damages flow essentially as a matter of course from a finding of liability. For example, had plaintiffs here sought and received a class-wide finding that their fuel pumps are defective and asked for money damages instead of replacement, each would almost assuredly receive substantially the same fixed cost of replacing the pump. That money payment clearly could not be aggregated, and this court can not [sic] conclude that an in-kind equivalent should be treated differently.

*Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1267 n. 8 (N.D.Ala.1998).

This Court need not determine whether *Edge* was correctly decided. It is sufficient to note that *Edge* is distinguishable from this case. In *Edge*, in addition to seeking compensation for past overcharges on late fees, the plaintiffs also sought an injunction to prevent Blockbuster from continuing to charge an excessive late fee in the future. A court might conclude that the injunction against future overcharges on late fees was a significant component of the relief sought by the *Edge* plaintiffs, and that the plaintiffs had a financial interest in the prospective injunctive relief to protect them in their future business dealings with Blockbuster. Such a right might be interpreted as a common right held collectively by all plaintiffs.

In contrast, the injunction sought in this case is merely directed at preventing Defendant from enforcing the allegedly illegal prepayment penalty provisions in existing loans. Plaintiff has expressed no interest in future loans. While a judgment in Plaintiff's favor might affect Defendant's future loans, this class of Plaintiffs does not have a financial interest in Defendant's future business practices. They are only seeking compensation or equitable relief regarding their particular loan obligations.

In this respect this case is similar to *Campbell* where the court stated:

> However, in this case, and probably in most cases, only the compensatory component of the requested injunctive relief has value under *Ericsson.* Almost by definition, compensatory relief cannot be aggregated under *Tapscott* [*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996)]. It is designed to remedy a discrete harm to an individual plaintiff, and so represents an individual, not a common, interest. Whether couched in legal or equitable terms, compensatory relief is simply not aggregable. The only kinds of relief that have value to the plaintiffs here are compensatory in nature, so aggregation is not appropriate.

*Campbell*, 19 F.Supp.2d at 1267–68.

So it is in this case. The only relief Plaintiff is seeking in this case is compensatory in nature. Through this action Plaintiff is seeking, on behalf of a class of individuals who have or had loans with Defendant, reimbursement of any penalty paid or an injunction against charging the penalty on outstanding loans. Each Plaintiff is seeking to receive, or to be relieved from, a fixed sum. The value of this relief, to any one Plaintiff, will not approach the $75,000 level. Because the equitable relief sought is only a means through which the individual claim may be satisfied, the ban on aggregation applies to the equitable as well as the monetary relief. *See Snow*, 561 F.2d at 790–91. *See also Blair v. Source One Mortgage Servs.*

*Corp.*, 925 F.Supp. 617 (D.Minn.1996) (costs to defendant in complying with injunction against recovering certain premiums for private mortgage insurance in a class action cannot be aggregated to satisfy amount in controversy requirement for diversity jurisdiction); *Shelly v. Southern Bell Telephone & Telegraph Co.*, 873 F.Supp. 613 (M.D.Ala.1995) (defendant telephone company could not aggregate value of injunction against disconnecting collect calls from correctional facilities); *Smiley v. Citibank*, 863 F.Supp. 1156 (C.D.Cal.1993) (class action seeking injunction to prevent bank from charging certain late fees did not transform the action from one that would provide marginal benefits to the class into one that meets the amount in controversy requirement by virtue of the potential expense to defendant).

Finally, this Court finds no merit to Defendant's contention that the requisite amount in controversy is met by Plaintiff's request for attorney's fees.

In support of its argument Defendant has placed greatest reliance on *In re Abbott Labs.*, 51 F.3d 524, 526 (5th Cir.1995). The reasoning in *Abbott Labs* has no bearing on this case, however, because it involved the application of a specific Louisiana statute which required that fees be awarded only to the class representative. No similar statute is involved in this case.

■ Where each class member's right to attorney fees is based on the class member's separate and individual claim, attorney fees should not be aggregated. *Crosby v. America Online, Inc.*, 967 F.Supp. 257, 262 (N.D.Ohio 1997).

Because this court has neither federal question nor diversity jurisdiction over Plaintiff's complaint, Plaintiff's motion to remand will be granted, and this case will be remanded to the Berrien County Circuit Court, where it was originally filed.

An order consistent with this opinion will be entered.

### ORDER REMANDING CASE

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand to state court (Docket # 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Berrien County Circuit Court, where it was originally filed.

**IT IS FURTHER ORDERED** that the Clerk of this Court shall mail a certified copy of the order of remand to the clerk of the Berrien County Circuit Court.