Daniel SHERWOOD, et. al., Plaintiffs,

v.

MICROSOFT CORP., et.
al., Defendants.

No. 3:99–1191.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 22, 2000.

C. Dewey Branstetter, Jr., James Gerard Stranch, III, Branstetter, Kilgore, Stranch & Jennings, Nashville, TN, George Edward Barrett, Douglas S. Johnston, Jr., Edmund L. Carey, Jr., Barrett, Johnston & Parsley, Nashville, TN, Alan M. Mansfield, Milberg, Weiss, Bershad, Hynes & Lerach LLP, San Diego, CA, for Daniel Sherwood, plaintiff.

Leo M. Bearman, Stephen G. Anderson, Richard H. Stout, Baker, Donelson, Bearman & Caldwell, Nashville, TN, for Microsoft Corporation, defendant.

## MEMORANDUM

HAYNES, District Judge.

Plaintiffs, Daniel Sherwood, Roy Coggins and Sheila Coggins, doing business as Microfilm Services and William Overton, on behalf of themselves and all others similarly situated Tennessee citizens, filed this class action originally in the Circuit Court for the Twenty Eighth Judicial District of Tennessee against the defendant Microsoft Corporation, a Washington corporation with its principal place of business in Redmon, Washington. Plaintiffs' claims arise under the Tennessee antitrust statutes, Tenn.Code.Ann. § 47–25–101 *et. seq.*, and the Tennessee Consumer Protection Act, Tenn.Code.Ann. § 47–18–101 *et. seq.* The plaintiffs specifically allege that the defendant Microsoft engaged in anti-competitive acts by monopolizing the market for Intel-compatible personal computer operating systems. Microsoft also is alleged to engage in illegally tying of its Internet browser to its computer software program to the detriment of competition in this market by giving its Internet browser away in exchange for commitments from other firms to promote Microsoft's Internet Explorer. Microsoft is alleged to possess the monopoly power necessary to impose the illegal tie-in.

Microsoft removed the state court action to this Court asserting diversity jurisdiction under 28 U.S.C. § 1332 and alleging that the value of the injunction sought by the plaintiffs in this litigation exceeds the $75,000 jurisdictional requirement of Section 1332(a).

Pending before the Court are: (1) Microsoft's motion for a stay of all proceedings pending a transfer of this action to the forum chosen by Judicial Panel for Multidistrict Litigation (MDL) (Docket Entry No. 4) and the plaintiffs' motion to remand this action for lack of subject matter jurisdiction. (Docket Entry No. 6). Oral argument was held on these motions and both sides submitted extensive author-

ities in support of their respective positions. At the conclusion of the oral argument, the Court stayed all proceedings pending a ruling on these motions.[1]

For the reasons set forth below, the Court concludes that the amount in controversy here does not meet the requirement for subject matter jurisdiction under 28 U.S.C. § 1332(a). Under Sixth Circuit precedent involving removal actions, the Court is required to make an early determination of its jurisdiction and the proper forum for this action. Moreover, the Sixth Circuit rule and the rulings of this District are that in removal cases involving diversity actions, the jurisdictional amount is determined from the view of the plaintiff, not the defendant. Further, the Court cannot aggregate the class members' claims to determine the amount in controversy. From a review of the complaint and the entire record, the Court concludes that it lacks subject matter jurisdiction in this action and this action must be remanded to the state court.

## A. ANALYSIS OF THE MOTIONS

In its motion for a stay, Microsoft asserts that there are more than forty (40) private class actions filed against it asserting claims under federal and state antitrust laws. A number of the plaintiffs in those actions have filed motions with the Judicial Panel for Multidistrict Litigation to transfer those actions to a single District Court for all pretrial proceedings under 28 U.S.C. § 1407. Without a stay, Microsoft asserts that it will suffer needless hardships by being required to litigate in different forums and to engage in duplicative discovery. Moreover, there are purportedly overlapping classes in these actions. In Microsoft's view, the plaintiffs would not be prejudiced by a stay and any possible prejudice to the plaintiffs is far outweighed by the long term benefits to

the parties to have a single forum to decide all pretrial motions and discovery. Microsoft also argues that to stay these proceedings will also conserve the judicial resources of the affected courts.

In their motion to remand, the plaintiffs assert that their pleading clearly reflects that they seek to invoke only state court jurisdiction. Their complaint specifically alleges that their claims are for less then $75,000, the minimum jurisdictional amount under 28 U.S.C. § 1332(a). The plaintiffs also argue that federal law precludes the aggregation of class members' individual claims to satisfy the jurisdictional amount under 28 U.S.C. § 1332 and that Sixth Circuit precedents adopt the plaintiffs' view of the value of the claims to determine the amount in controversy for diversity jurisdiction under Section 1332(a).

In opposition, Microsoft submitted the affidavit of Christopher Jones, its group manager for its desktop Windows division. (Docket Entry No. 11, Jones Affidavit at p. 1). From his review of the plaintiff's complaint, Jones asserts that the plaintiffs challenge, as an illegal practice, Microsoft's tying the sale of its Windows operating systems to other Microsoft software products, including its Internet browser. *Id.* at p. 2. According to Jones, the cost to Microsoft to offer a single plaintiff a version of its Windows 98 without the Internet Explorer, would exceed $75,000 by a substantial amount. *Id.* Jones concludes that

> In estimating Microsoft's costs a useful analogy may be Microsoft's costs of designing, developing and testing Windows 98 Second Edition, a relatively minor operating system update that Microsoft commercially released in the summer of 1999 . . . .
>
> Microsoft spent approximately one year designing, developing and testing that

---

1. The Eastern District of Tennessee issued a similar Stay Order citing "serious questions of lack of subject matter jurisdiction." *Davenport v. Microsoft Corp.,* No. 3:99cv660

(E.D.Tenn. Order filed January 24, 2000 at p. 11) (the Honorable Robert P. Murrian, United States Magistrate Judge).

product. The process involved approximately 640 people and cost Microsoft approximately *$58.5 million. That amount is likely a good approximation of the cost that Microsoft would incur in designing, developing and testing a version of Windows 98 that does not provide users with the ability to browse the WorldWide web.*

*Id.* (emphasis added).

## B. CONCLUSIONS OF LAW

■ Despite the pendency of multiple similar actions across the country, the Sixth Circuit has warned that a district court's first obligation is to determine whether the Court has subject matter jurisdiction because without such jurisdiction, there is not any action to transfer. *Banc-Ohio Corp. v. Fox,* 516 F.2d 29, 31–32 (6th Cir.1975). "No matter how desirable [the defendant] feel[s] it may be to consolidate ... all litigation" in a single forum, "[s]uch a transfer cannot be made unless the district court properly has jurisdiction of the subject matter of the case." *Id.* at 32. The Notice from the Judicial Panel Multidistrict Litigation to this Court stated that notwithstanding the pendency of the motions before that Panel, this Court could decide any pending motions. (Docket Entry No. 26).

■ In this Circuit, jurisdictional issues should be decided as soon as practicable, *Franzel v. Kerr Mfg. Co.,* 959 F.2d 628, 629 (6th Cir.1992) (noting in a diversity case, the lack of fairness and disruption of judicial efficiency when a party delays raising the issue of jurisdiction). This rule applies because in a removal action, the lack of subject matter jurisdiction in a diversity action can be considered on appeal. *Id.See also* 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") In a removal context, the Sixth Circuit observed that "[t]he forum for suit ought to be settled at some time early in the litigation." *Brierly v. Alusuisse Flexi-*

*ble Packaging Inc.,* 184 F.3d 527, 533 (6th Cir.1999) (quoting with approval *Brown v. Demco Inc.,* 792 F.2d 478, 482 (5th cir. 1986)).

■ The removal statutes, 28 U.S.C. § 1441 *et. seq.* are subject to strict construction, *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) and are "to be construed strictly, narrowly and against removal." *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.,* 5 F.3d 963, 968 (6th Cir.1993). "All doubts are resolved against removal." *Coyne v. American Tobacco Co.,* 183 F.3d 488, 492 (6th Cir.1999). As this Court observed, removal statutes "are to be strictly construed [and] ... in favor of remand." *Nasco Inc. v. Norsworthy,* 785 F.Supp. 707, 710 (M.D.Tenn.1992) (Higgins, D.J.). "The policy promotes comity and the rights independence of state governments." *Id.. (quoting Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)).

For these reasons, the Court considers first the plaintiffs' motion to remand that challenges this Court's lack of subject matter jurisdiction over this action. If that motion is granted, then Microsoft's motion to stay is moot.

In addition to the restrictive rules of construction on removal, there are also restrictive guidelines on this Court's exercise of its diversity jurisdiction. *Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 73, 62 S.Ct. 15, 86 L.Ed. 47 (1941); *Her Majesty the Queen v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989). Although the Court must consider "the primary and controlling matter in dispute" and "the principal purpose of the suit," the Supreme Court emphasized that:

The dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensibilities, and of relieving the federal courts of the overwhelming burden of business that intrinsically belongs in

state courts in order to keep them free for their distinctive business. *The policy of the statute (conferring diversity upon the district courts) calls for its strict construction.* The power reserved to the states, under the Constitution (Amendment 10) to provide for the determination for controversies in their courts, may be restricted only by the action of the Congress in conformity to the judiciary sections of the Constitution (Article 3). *Due regard for the rightful independence of state governments, which should actuate federal courts, requires that [they] scrupulously confer their own jurisdiction to the precise limits which the statute has defined. In defining the boundaries of diversity jurisdiction, this Court must be mindful of this guiding Congressional policy.*

314 U.S. at 73, 62 S.Ct. 15 (emphasis added).

■ The crux of the issue on the motion to remand is how to value or calculate the amount in controversy between the parties for the purpose of the jurisdictional prerequisite of $75,000 for diversity jurisdiction under § 1332. The burden of proof is on the defendant to justify its removal of the action, *Nasco*, 785 F.Supp. at 709, by a preponderance of the evidence. *Gafford v. General Electric Co.*, 997 F.2d 150, 160 (6th Cir.1993).

■ Under 28 U.S.C. § 1332(a), "[t]he District court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between ... citizens of different states." In diversity citizenship actions, "[t]he general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount in the complaint is not claimed 'in good faith'." *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–

289, 58 S.Ct. 586, 82 L.Ed.2d 845 (1938)). Under *St. Paul Mercury*, if "[the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." 303 U.S. at 294, 58 S.Ct. 586. Other courts have recognized that the plaintiff can waive his right to recovery and allege an amount below the minimum amount required under the diversity statute. *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir.1997) *cert. denied. Abbott Laboratories v. Huggins*, 522 U.S. 1153, 118 S.Ct. 1178, 140 L.Ed.2d 186 (1998) and *Smith v. Paul Revere Life Ins. Co.*, 391 F.Supp. 310, 311 (E.D.Tenn.1974).

Here, in their state court complaint, the plaintiffs expressly allege less than $75,000 dollars in damages, but they do seek an award of injunctive relief. Microsoft submitted Jones' affidavit that the cost of that injunctive relief to Microsoft is approximately $58.5 million i.e. its estimated costs to conform its Windows system for "users" as demanded by the plaintiffs. (Docket Entry No. 11, Jones' Affidavit at p. 7).

According to the parties, a split now exists among courts on how to measure the jurisdictional amount at issue yielding essentially three views: (1) the "plaintiff's viewpoint" i.e. the amount in controversy as stated in the complaint or the value of the right plaintiff is asserting; (2) the "defendant's viewpoint" i.e. where the complaint seeks injunctive relief, what is the amount required of the defendant to provide the injunctive relief sought by the plaintiff; and (3) the "either party's view" of the value of the controversy or the amount required to provide the relief sought. *See In re Brand Name Prescription*, 123 F.3d at 609–10 (7th Cir.1997) and *Hoffman v. Vulcan Materials Co.*, 19 F.Supp.2d 475, 479–81 (M.D.N.C.1998). A fourth view that describes the "viewpoint approach" utilizes the Court's determination of "the economic worth of the 'object

in controversy'" or the "pecuniary consequence to those involved in the litigation." *Hoffman*, 19 F Supp.2d at 481 (citations omitted). Yet, this Court's obligation is to ascertain the relevant Sixth Circuit's governing precedents.

The earliest relevant precedent is *Pennsylvania R.R. v. City of Girard*, 210 F.2d 437 (6th Cir.1954) where the Sixth Circuit considered the jurisdictional issue in a diversity action brought by the City of Girard for injunctive relief against the defendant who contended that the cost to comply with the City's request for an injunction was sufficient to give the District Court diversity jurisdiction. The Sixth Circuit, however, stated "the suit is for injunction as well as for damages, the test is the value of the controversy. *This is measurable by the expense to which the plaintiff will reasonably be put* through the years *and by the value of the rights sought to be protected.*" *Id.* at 439 (emphasis added and citations omitted).

In *City of Girard*, the Sixth Circuit relied upon the Supreme Court's decision in *Glenwood Light & Water Co. v. Mutual Light Heat & Power Co.*, 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174 (1915). In *Glenwood*, the Supreme Court considered a determination of the jurisdictional amount involving a claim for injunction to restrain a nuisance and concluded that:

> The District Court erred in testing the jurisdiction by the amount that it would cost defendant to remove its poles and wires where they conflict or interfere with those of complainant, and replacing them in such position as to avoid the interference. Complainant sets up a right to maintain and operate its plant and conduct its business free from all wrongful interference by defendant. This right is alleged to be of a value in excess of the jurisdictional amount, and at the hearing no question seems to have been made but that it had such value. The relief sought is the protection of that right, now and in the future, and the value of that protection is determinative of the jurisdiction.

239 U.S. at 125, 36 S.Ct. 30 (emphasis added). *Glenwood* is cited by those Courts that adopt the "plaintiff's view" approach. *Hoffman*, 19 F.Supp.2d at 480.

The Sixth Circuit next visited the issue of how to determine the amount in controversy in a diversity action in *Goldsmith v. Sutherland*, 426 F.2d 1395 (6th Cir.1970) where the plaintiff sought an injunction to restrain an army officer from excluding him from a military reservation where the plaintiff sought to distribute leaflets without a permit. To determine the jurisdictional amount required by the jurisdictional statute, the Court stated that: "The rule pertaining to the specified dollar sum requirement is that the matter in dispute must be money, or some right, the value of which, in money, can be calculated and ascertained." *Id.* at 1396 (citation omitted). The Court also noted that "in injunction actions, the amount in controversy is not the amount that the plaintiff might recover at law, but rather the value of the right to be protected or the extent of the injury to be prevented." *Id.* at 1398, citing *City of Girard.*

In *Sellers v. O'Connell*, 701 F.2d 575, 578–579 (6th Cir.1983), the Sixth Circuit restated the general rule on jurisdictional amount and concluded from an analysis of plaintiff's class claims under a pension plan, that the plaintiff's claim did not exceed the jurisdictional amount because class claims cannot be aggregated to meet the jurisdictional amount under 28 U.S.C. § 1332. Moreover, under controlling law, the plaintiff's claim for punitive damages could not be considered and because plaintiffs' claim was for a fixed sum and did not reduce other recoveries, a common or undivided interest did not exist to confer the requisite amount in controversy.

The most recent Sixth Circuit decision is *Lodal, Inc. v. Home Insurance Co. of Illinois*, 156 F.3d 1230, 1998 WL 393766 (6th Cir.1998), where the Sixth Circuit addressed the contention as to whether diversity action was established when the

plaintiff sought a declaration of coverage of its litigation costs under a policy issued by the defendant. The defendant removed the action and in addressing the jurisdictional issue the Sixth Circuit followed the decision in *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) that stated: "In actions seeking declaratory or injunctive relief it is well established that the amount in controversy is measured by the value of the object of the litigation." *Id.* at *1. In applying that principle, the Court observed that while the insured plaintiff had only incurred $50,000 in litigation expenses, the policy allowed the maximum recovery of $200,000. Thus, the Court concluded: "We therefore hold that the magistrate judge correctly determined that the value of the right [the plaintiff] seeks to protect includes the potential value of future claims under the policy and that the amount in controversy is therefore $200,000." *Id.* at pg. 2.Again, this measure for the amount in controversy was from the plaintiff's perspective.

Among the District Courts within the Sixth Circuit, there is a divergence of opinions. In *In re Cardizem Antitrust Litigation,* MDL No. 1278, (E.D.Mich. Memorandum filed January 27, 2000) the Court noted the split among the courts and concluded that:

> This Court finds the "either viewpoint" to be the approach. This rule serves the purpose of a jurisdictional amount in controversy requirement—to keep away trivial cases from the federal system. Because the jurisdictional amount was enacted primarily to measure the substantiality of the suit, the question of whether the controversy is substantial should not be entered unqualifiedly by looking only to the value of that which the plaintiff stands to gain or lose. Under this either viewpoint approach, the Court considers the pecuniary result to either party and considers both the value to the plaintiff of conducting his ... personal affairs incur free from the ac-

tivity sought to be enjoined and the costs of compliance the defendant will incur if the injunction is granted.

*Id.* at pp. 24–24 (quoting 14B Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure, Jurisdiction §§ 3703 and 3708 Moore, et. al., Moore's Federal Practice (other citations omitted)). The Court later stated that because the plaintiffs sought "to enforce a single right in which they have a common and individual interest", "the entire value of the [defendants'] cost of compliance with the requested injunctive relief may be considered in determining the amount in controversy for jurisdictional purposes." *Id.* at 27.

In *Nelson v. Associates Financial Services Co. of Indiana,* 79 F.Supp.2d 813 (W.D.Mich. 2000) the District Court considered this jurisdictional issue amount in the context of a class action charging violations of Michigan's usury statutes and consumer financial services statute. The Court observed that

> The federal courts are divided as to the proper perspective to use in determining the amount in controversy. There is a growing trend to find the amount in controversy to be met if either the plaintiff's harms or the defendant's cost of compliance will exceed $75,000. *The majority of courts, however, have adopted the position that in class actions the plaintiff's viewpoint should be followed. Were the court to consider the amount in controversy from the defendant's viewpoint, the rule against non aggregation could be circumvented.* A defendant should not be able to aggregate its potential cost of complying with injunctive relief sought by multiple plaintiffs in order to obtain a federal forum when the Plaintiffs cannot do so relative to their claims.

*Id.* at 818 (emphasis added). *Accord, Crosby v. America Online Inc.,* 967 F.Supp. 257, 263–264 (N.D.Ohio 1997).

This Court addressed this issue in *Wilkinson v. E.I. DuPont de NeMours & Co.*

(3:98–0440 M.D.Tenn. Memorandum filed September 14, 1998), wherein the Honorable Todd J. Campbell in a consumer class action alleging violation of the Tennessee Consumer Protection act, remanded the class action to a state court noting that under *St. Paul* and more recent decisions, plaintiffs can elect a state forum by lowering the amount of damages they claim. Judge Campbell specifically noted that "to the extent Plaintiff seeks to enjoin illegal conduct, Defendants' cost of abstaining from unlawful activities cannot be included in the jurisdictional amount." *Id.* at p. 5 n. 3

More recently, the Honorable Thomas A. Higgins in *McClure v. Phillip Morris Cos., Inc.,* No. 3:99–0197 (M.D.Tenn. Memorandum filed February 9, 2000) remanded a class action asserting claims under the Tennessee Consumer Protection Act. After a review of the precedents of the Sixth Circuit and elsewhere, Judge Higgins concluded that " '[t]he Court finds that the value of the injunctive relief should be viewed from the perspective of the putative class members.' " *Id.* at p. 8. *Accord, Engel et. al. v. Chevron Corp.,* No. 3–96–cv–377 (1996 U.S.Dist. Lexis 20772 at \*8) (E.D.Tenn. June 21, 1996) (other citations omitted).

■ Applying *Glenwood,* the Sixth Circuit decisions in *Goldsmith, City of Girard and Lodal,* as well as the rulings in this District and majority of the District Courts in the Sixth Circuit and elsewhere, this Court concludes that the jurisdictional amount is to be determined by the plaintiffs' assigned value of their claims or the value of the right sought to be enforced by the plaintiffs. From the review of the plaintiffs' pleadings, the amount of their damages claim is insufficient to meet the $75,000 jurisdictional amount.

■ Even if the Court were to accept Microsoft's manager's estimate of the mon-

ey required to provide the injunctive relief sought by the plaintiffs, i.e., $58.5 million or to adopt the defendant's view or either party's view approach, this Court would still lack subject matter jurisdiction because this controversy would not exceed $75,000 for each class member. When viewed from the perspective of the plaintiffs' class, for Microsoft's estimated $58.5 million to provide the injunctive relief sought, there would only need to be more than 710 class members [2] to bring the apportionment of that total cost among each class member to less than $75,000 per class member. According to Jones, this "amount is likely a good approximation of the cost that Microsoft would incur in designing, developing and testing a version of Windows 98 that does not provide *users* with the ability to browse the WorldWide Web." (Docket Entry No. 11, Jones Affidavit at p. 7) (emphasis added). The underscored portion of Jones' affidavit is wholly consistent with plaintiffs' interpretation that this $58.5 million dollars is the estimated cost to provide relief to the entire class. This estimate, when applied to the class, does not satisfy the jurisdictional amount of Section 1332(a).

Even those courts that adopt the "either view point" or "defendant's viewpoint" approach conclude that the value of the right sought to be enforced by the plaintiff on behalf of the class cannot be aggregated.

[T]he minimum amount in controversy would be present if the injunction sought by the plaintiffs would require some alteration in the defendant's method of doing business that would cost the defendant at least the statutory minimum amount ... [o]ften it will be equivalent to the previous ground, the value of the injunction to the plaintiff. The defendant would be willing to pay the plaintiff up to a shade less than the cost that the injunction would impose on the defen-

**2.** This number is a reasonable estimate of the class, given judicial findings of Microsoft's monopoly power in the world for the Intel-compatible personal computer operating sys-

tems. *See United States v. Microsoft,* Civil Action No. 98–1232, D.D.C. Findings of Fact filed at p. 16, para. 33–35, November 5, 1999.

dant to induce the plaintiff to abandon his request for injunctive relief ... If however, there are multiple plaintiffs actual or potential, the defendant will not be willing to pay each one as much as he would if there were only one possible plaintiff. It may seem paradoxical to defeat removal in a multiplaintiff setting on this basis. *"But it is implicit in the rule that forbids aggregation of class members separate claims that will sometimes be more difficult for defendant desiring to remove a diversity case to federal court to establish the minimum out of controversy in a multiplaintiff case in a much smaller single plaintiff case ... [w]hatever the form of relief sought, each plaintiff's claims must be held separate from each other plaintiff's claims. From both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must separately evaluated."*

*In re Brand Name Drugs Antitrust Litigation,* 123 F.3d at 609, 610 (emphasis added).

In closing, among the interest to be considered in this removal action is comity for the state's interest in this litigation. *Chase National Bank,* 314 U.S. at 73, 62 S.Ct. 15; *Nasco,* 785 F.Supp. at 710. The state courts have an independent interest in the construction and the enforcement of Tennessee's antitrust and consumer protection statutes. Absent a clear basis for federal jurisdiction, a Tennessee state court is the appropriate forum for such decisions. Based upon experience in this District, judges in state court, when faced with related multidistrict actions in federal courts, coordinate schedules and avoid unnecessary discovery costs for the parties.

For the reasons stated above, the plaintiffs' motion to remand for lack of subject matter jurisdiction under 28 U.S.C. § 1332(a), the federal diversity statute, is granted. The Court denies Microsoft's

motion to stay the entire proceedings as moot.

An appropriate Order is filed herewith.